El Cid HARRIS *v.* STATE of Arkansas

CR 89-34                                    774 S.W.2d 121

Supreme Court of Arkansas
Opinion delivered July 10, 1989

*John W. Walker, P.A.,* by: *R.S. McCullough; Don E. Glover,* for appellant.

*Steve Clark,* Att'y Gen., by: *Ann Purvis,* Asst. Att'y Gen., for appellee.

JOHN I. PURTLE, Justice. A jury convicted the appellant of seven counts of rape and one count of kidnapping and recommended sentences totaling 230 years. The trial court followed the recommendation of the jury. For his appeal the appellant makes four arguments: (1) the trial court erred in denying appellant a full psychiatric evaluation; (2) the court erred in refusing to allow a proffer of evidence concerning the need for an additional psychiatric evaluation; (3) the court erred in allowing the state to proceed on a felony information which did not conform to the law; and (4) the jury verdict finding the appellant guilty of kidnapping is not supported by substantial evidence. None of the arguments is persuasive. The conviction and sentence are affirmed.

The information charged the appellant with seven counts of rape, one count of kidnapping and one count of aggravated robbery, alleged to have been committed on the same victim on December 18, 1987. The aggravated robbery charge was not presented to the jury. The victim was personally acquainted with the appellant and reported him to the police immediately after the crimes occurred. She described the circumstances of this case as commencing about 3:30 p.m. on that date when the appellant came into the school which had closed early for Christmas holidays. The victim was alone in the school until El Cid Harris appeared. When she heard footsteps outside her door, she opened the door and noticed the appellant and said, "El Cid, what do you want?"

She further testified that the appellant, with whom she was acquainted, attacked her and that she fought him off for fifteen minutes. During this fifteen-minute struggle she broke away from him on two occasions. Once she got to the outer door of the building before he caught her and dragged her back down the hallway and into her office. The second time she temporarily escaped, she kicked him in the groin and ran as far as the "astrodome," the covered area outside between the wings of the building. He again caught her from behind and threatened to kill her before starting to drag her back into the building. When he got back to the outer door of the building, she managed to get loose and started to run, but he knocked her down again and, by the hair of her head, pulled her back into the building.

He then ripped her clothes off and demanded that she get on the desk, and when she refused, he threw her to the floor and raped her for the first time. He then demanded that she perform oral sex on him and, when she refused, he beat her head against the floor and forced his penis into her mouth. After that, he performed oral sex on her. Then he raped her again. Shortly thereafter, he forced her to get on her knees and he raped her in the rectum. After that he forced her to perform oral sex for the second time. He then threw her on the floor, fell on top of her, and raped her a third time.

After this series of rapes, he asked her whether she had any money and when she said she didn't, he asked her about checks. She told him that she didn't have any checks. He repeatedly

threatened to kill her, she said. He then had her get up and put her clothes on and he did the same. They then went out by the drinking fountain and into a bathroom in the teacher's lounge. He was still dragging her by the collar at that time. He looked around the teacher's lounge and opened the refrigerator and took out a coke and poured it down her throat. At that time he forced her on the table and raped her again. Then he compelled her to sit astride him on the couch while he raped her. When they left the teacher's lounge he told her: "Come on we're going. I am going to kill you."

The first argument is that the court erred in denying appellant another psychiatric examination. The second argument is that the trial court erred by refusing to allow the appellant to make a proffer concerning the need for additional psychiatric evaluation. There appears to have been some question concerning the appellant's mental condition and he was examined at a local clinic. At a pre-trial hearing, defense counsel requested that the appellant be examined at the state hospital. This request was denied. Counsel then asked he be allowed to make a proffer on the need for further evaluation. This request was denied.

■ During the voir dire of the jury for appellant's trial, the prosecutor inquired whether appellant was going to assert a defense of mental disease or defect. Defense counsel stated: "No, I'm not going to assert it, your Honor. We haven't brought a psychiatrist down." The prosecutor: "He's withdrawing that defense?" The court: "Yes, he's withdrawing that defense." Defense counsel: "Subject to any —, we're withdrawing it. We are not going to assert it here." In view of the fact that the defense had originally intended to interpose the defense of mental defect, the trial court improperly rejected the offer to submit the appellant's testimony concerning the need for additional psychiatric evaluation. However, at the beginning of the trial the defense, in open court, waived any defense concerning mental disease or defect. We consequently find it unnecessary to consider either the first or second point argued for reversal.

The third argument is that the court erred in allowing the state to prosecute on an improper felony information. His primary objection is to that language in the information which states:

The said defendant on or about December 18, 1987, in

Ashley County, Arkansas, did unlawfully: In seven specific instances engage in sexual intercourse or deviate sexual activity with another person by forcible compulsion.

Upon appellant's motion for a bill of particulars he was furnished a copy of the victim's statement which sets out all of the details of the different allegations of sexual intercourse and deviate sexual activity. The proof at the trial was exactly the same. The state therefore informed the appellant of the charges in sufficient detail by furnishing the statement of the victim.

█ The appellant relies upon our decisions in *Bliss* v. *State*, 282 Ark. 315, 668 S.W.2d 936 (1984); and *Limber* v. *State*, 264 Ark. 479, 572 S.W.2d 402 (1978). *Bliss* held that an indictment need not include specific statements of fact constituting the offense. However, in such a case, the state is bound to furnish a bill of particulars upon the request of the defendant. *Limber* held that the purpose of the bill of particulars was to acquaint the defense with sufficient information that he could be prepared for trial. The information had charged two persons with multiple acts of violence to a child. The case was affirmed because the state had furnished details of the accusations by turning over the prosecutor's complete file to the defense. Moreover, the evidence at trial did not vary from that furnished to the defense prior to trial. In effect a bill of particulars was supplied. The same is true in the present case. As a substitute for a bill of particulars the state may furnish the accused with the information in the file and any other information within the control of the state which is reasonably necessary to properly defend against the charges. The statement provided to the defense was in complete detail and was as useful to the defense as any bill of particulars could have been. Therefore, we find no prejudice.

█ The final argument is that the evidence does not support the conviction for kidnapping. The appellant submits the controlling authority on this issue is found in *Summerlin* v. *State*, 296 Ark. 347, 756 S.W.2d 908 (1988). The heart of the decision in *Summerlin* is that when the restraint exceeds that normally incidental to another crime, such as rape, the evidence is sufficient to sustain a prosecution for kidnapping. The applicable code is Ark. Code Ann. § 5-11-102(a)(4) (1987), which reads in part as follows:

> A person commits the offense of kidnapping if, without consent, he restrains another person so as to interfere substantially with his liberty with the purpose of . . . inflicting physical injury upon him, or of engaging in sexual intercourse, deviate sexual activity or sexual contact with him . . . .

On appellate review we affirm the jury's finding if it is supported by substantial evidence. The evidence is viewed in the light most favorable to the state. *Lewis* v. *State*, 295 Ark. 499, 749 S.W.2d 672 (1988). We considered a similar argument in *Tarry* v. *State*, 289 Ark. 193, 710 S.W.2d 202 (1986), where we held that rape is not a continuing offense but consists of engaging in sexual intercourse or deviate sexual activity with another person by forcible compulsion. The opinion continued: "Here the prosecutrix testified that she had been raped in two different ways, and the jury so found by separate verdicts. There was not a continuing offense, for the two acts of rape were of a different nature and were separated in point of time. A separate impulse was necessary for the commission of each offense. There were two offenses."

The appellant first contacted the victim in the hallway outside her office. When she attempted to get away, he caught her and dragged her back. On another occasion she got free and went out under the "astrodome." Finally, he took her into a separate area where the teacher's lounge is located and raped her again.

■■  The kind of restraint which is considered incident to a rape is that which is necessary to consummate the act. Any additional restraint will support a conviction for kidnapping. See *Summerlin* v. *State*, 296 Ark. 347, 756 S.W.2d 908 (1988), where we stated:

> [T]he exclusion of de minimus restraints from the definition of kidnapping is desirable since offenses such as rape or robbery necessarily contemplate restrictions on the victim's liberty while the crime is actually committed. Thus, it is only when the restraint exceeds that normally incidental to the crime that the rapist (or robber) should also be subject to prosecution for kidnapping.

Chasing and dragging the victim from room to room or building to building and forcefully engaging in acts of rape between the

attempts at freedom certainly involve restraint more than that normally incidental to the crime of rape. The facts in this case clearly warrant the finding that the appellant kidnapped his victim before and between the acts of rape.

Affirmed.