932 S.W.2d 756 (1996)
326 Ark. 529
Ledell LEE, Appellant,
v.
STATE of Arkansas, Appellee.
No. CR 96-590.
Supreme Court of Arkansas.
November 11, 1996.
*758 Dale Adams, Little Rock, for Appellant.
Kent G. Holt, Asst. Atty. General, Little Rock, for Appellee.
JESSON, Chief Justice.
The appellant, Ledell Lee, was convicted of the rape, kidnapping, and robbery of a Jacksonville woman and was sentenced to consecutive terms of life, fifty years, and forty years, respectively. He raises three issues of appeal, none of which has merit. We affirm.
On the evening of March 7, 1991, the fiftyyear-old victim was returning home from Knight's Grocery Store on Main Street in Jacksonville. As she was walking in front of Jacksonville Elementary School, she noticed that a tall, black male was following her. When she stepped off the sidewalk to allow the man to pass her, he grabbed her around the neck and began strangling her, causing her to drop her groceries. The man began rummaging through her purse in an attempt to find money. Warning the victim to stay quiet if she wanted to live, the man then dragged her approximately one city block to the back of the school building where there was no light. When she attempted to cry out for help, the man would strangle her until she thought she would pass out. At one point, the victim thought she was going to die.
Once behind the school building, the man removed the victim's belt and bound her hands with it. Dumping the contents of her purse, he discovered an apron that he used to cover her face. After removing the victim's tennis shoes, jeans, girdle, and panties, he demanded oral sex. When the victim refused, the man vaginally raped her. The man then left the victim, her hands still bound and her face blindfolded.
Following a rape-kit examination that was performed on the victim, semen samples were submitted to the State Crime Lab for analysis. Appellant and another man became suspects in the case. Their blood samples as well as the victim's blood were submitted for testing. The State's expert who performed the DNA analysis testified that the probability of the perpetrator being someone other than appellant was one in eighty-five million from the black population. The jury found appellant guilty as charged, and he appeals.

I. Closing argument
Appellant first argues that the trial court erred in denying his motion for mistrial, which he made after the State presented its rebuttal argument during the penalty phase. During appellant's closing argument, his counsel posed to the jurors that the State had wasted two days of their time to try appellant when it had already obtained a death sentence against him in an unrelated capital-murder case. Urging that appellant's death sentence was "going to be carried out," his counsel asked the jury to recommend that appellant receive the minimum sentences for his convictions. During rebuttal, the deputy prosecutor responded:
Ladies and gentlemen, [defense counsel] argues to you that you know that the death penalty will be carried out. Do you know that?
Appellant moved for mistrial on the basis that the State was improperly minimizing the jury's responsibility. In response to the motion, the trial court admonished the jury as follows:
I will instruct the jury. The defendant has received the death penalty, so that is the sentence of the Court of the Second Division of Pulaski County Circuit Court.
You may now pass to the jury room to deliberate on sentencing.
The trial court is given broad discretion to control counsel in closing arguments, and we do not interfere with that discretion absent a manifest abuse of it. Mills v. State, 322 Ark. 647, 910 S.W.2d 682 (1995). Closing remarks that require reversal are rare and require an appeal to the jurors' passions. Id.
Appellant's counsel devoted his entire closing argument to the impact of appellant's death sentence in the unrelated case on his *759 sentence in this case. When reviewing the deputy prosecutor's remark in light of these circumstances, we do not view it as an appeal to the jurors' passions, but as a rebuttal of appellant's own closing remarks. We have recognized the propriety of "fighting fire with fire" when one of the parties makes an improper closing argument. See Larimore v. State, 317 Ark. 111, 877 S.W.2d 570 (1994). By opening the door, that which might have been impermissible becomes permissible. See McFadden v. State, 290 Ark. 177, 717 S.W.2d 812 (1986). Because appellant opened the door to the prosecutor's closing remarks, we cannot say that the trial court erred in refusing to grant a mistrial.

II. Kidnapping conviction
Next, appellant claims that there was insufficient evidence to support a separate charge for kidnapping because the State failed to show that he employed any greater restraint on the victim than that normally incident to rape.
A person commits the offense of kidnapping if, without consent, he restrains another person so as to interfere substantially with her liberty with the purpose of inflicting physical injury upon her or of engaging in sexual intercourse, deviate sexual activity, or sexual contact with her. Ark.Code Ann. § 5-11-102(a)(4) (1987). In defining kidnapping, the Criminal Code speaks in terms of restraint rather than removal. The Commentary to this statute explains that the exclusion of de minimis restraints from the definition of kidnapping is desirable since offenses such as rape or robbery necessarily contemplate restrictions on the victim's liberty while the crime is actually committed.
In Arkansas, it is only when the restraint exceeds that normally incidental to the crime that the rapist or robber should also be subject to prosecution for kidnapping. Summerlin v. State, 296 Ark. 347, 756 S.W.2d 908 (1988). The kind of restraint that is considered necessary to consummate rape is that which is necessary to consummate the act. Harris v. State, 299 Ark. 433, 774 S.W.2d 121 (1989). Any additional restraint will support a conviction for kidnapping. Id. Among the factors that have been considered by courts in determining whether a separate kidnapping conviction is supportable include whether the movement or confinement (1) prevented the victim from summoning assistance; (2) lessened the defendant's risk of detection; or (3) created a significant danger or increased the victim's risk of harm. Frank J. Wozniak, Annotation: Seizure of Detention for Purpose of Committing Rape Robbery, or Other Offense as Constituting Separate Crime of Kidnapping, 39 A.L.R. 5th 283, 358 (1996).
In support of his argument that the kidnapping conviction should not stand, appellant cites Summerlin v. State, supra, and Shaw v. State, 304 Ark. 381, 802 S.W.2d 468 (1991). In Summerlin, the victim was jogging along a lakeside path when she was approached by her attacker, who was nude and holding his penis. When the victim declined his offer to "go for a swim," he tackled her from behind and tried to take off her shorts. While the victim was able to escape, her attacker was charged and convicted of attempted rape and kidnapping. We reversed the kidnapping conviction, concluding that the restraint employed did not exceed that normally incident to attempted rape. In Shaw, the victim voluntarily got into her attacker's vehicle, but was later driven to a dead-end road and raped. We reversed the kidnapping conviction due to the victim's testimony that she consented to her attacker's actions until the point at which he raped her.
Unlike the facts in Summerlin and Shaw, the restraint employed by appellant in this case was not merely incidental to his rape of the victim. Appellant dragged the victim for approximately one city block from a lighted city street to a dark area behind a school. We cannot say that, standing alone, the length of asportation supports the kidnapping charge. However, when combining the dragging of the victim this distance with other factors present, we conclude that the restraint employed by appellant supports a separate conviction for kidnapping. By taking the victim to a dark and secluded place, appellant allowed the rape to be carried out more easily, thus preventing the victim from summoning assistance and decreasing his *760 risk of being caught. Moreover, the restraint itself posed a substantial risk of harm to the victim, who suffered both a bruised face and swollen neck from having been dragged and strangled to the point that she nearly lost consciousness. Under these circumstances, we hold that the restraint employed exceeded that which was necessary to effectuate the crime of rape, and thus supported appellant's separate conviction for kidnapping.

III. Motion for continuance
Finally, appellant argues that the trial court erred in denying his motion for continuance. In order to have a continuance granted, appellant must make a showing of good cause. ARCP 27.3. He must also demonstrate prejudice from the denial of the continuance. Davis v. State, 318 Ark. 212, 885 S.W.2d 292 (1994). When a motion for continuance is based on a lack of time to prepare, we will consider the totality of the circumstances. Id. The burden of showing prejudice is on appellant; we will not overturn the trial court's ruling unless appellant has demonstrated an abuse of discretion. King v. State, 314 Ark. 205, 862 S.W.2d 229 (1993). In this case, the crimes with which appellant was charged were committed on March 7, 1991. The State's information was filed on September 23, 1993. Represented by attorney Christopher Mercer, appellant was arraigned on September 23, 1993. In October of 1993, attorney Mercer was relieved and the public defender was appointed. That same month, appellant was committed to the State Hospital for evaluation. In March of 1994, the State Hospital reported that he was competent and fit to proceed. On March 14, 1995, the trial court relieved the public defender and appointed Dale Adams as counsel. After unsuccessfully moving for a continuance on March 19, 1995, August 28, 1995, and again at trial, appellant's jury trial began on October 18, 1995, at which he was represented by Adams and attorney Buddy Hendry.
We initially observe that appellant, who had waived speedy trial, was tried more than two years after the State had filed charges against him, and over four years after the commission of the offense. Nevertheless, appellant's counsel argues generally that he lacked time to prepare due to the fact that appellant's trial was his third trial in four weeks. Specifically, he proffered at trial that, had he had more time, he would have subpoenaed Don Smith and Ken King of the State Crime Lab to testify. According to Mr. Adams, King would have testified that the hair samples found at the rape scene did not match appellant's, and Smith would have testified that the fingerprints taken were insufficient for identification. However, the State agreed to stipulate to their reports. Under these circumstances, appellant has not met his burden of demonstrating prejudice.
The record has been examined in accordance with Ark. Sup.Ct. R. 4-3(h), and no prejudicial error has been found that would warrant reversal.
Affirmed.