******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

EVELEIGH, J., with whom ZARELLA and ROB-INSON, Js., join, dissenting. I respectfully dissent. I respectfully disagree with the majority that the habeas court properly granted the petitioner, Walter Hinds, a new trial on the charge of kidnapping in the first degree. Specifically, I would conclude that the petitioner has not demonstrated actual prejudice because he has not shown that there is a substantial likelihood that the jury would not have found that the petitioner's restraint of the victim in the parking lot and subsequent removal to the woods constituted a crime of independent legal significance. I also agree with and join Justice Zarella's dissent. In particular, I agree with Justice Zarella that the respondent, the Commissioner of Correction, "did not raise a procedural default defense" in *Luurtsema* v. *Commissioner of Correction*, 299 Conn. 740, 774, 12 A.3d 817 (2008), and that, therefore, that case "provides no guidance as to the applicability of the procedural default rule when a petitioner who has not requested a *Salamon*[1] instruction at trial or raised the issue on direct appeal makes a *Salamon* claim in a subsequent habeas proceeding." (Footnote added.) I also agree with Justice Zarella that, because the petitioner himself does not "suggest that the procedural default rule should be replaced by an entirely different standard," it is "improper for the majority to consider [this] issue in the present case without the input of the parties who appealed to this court."

In *State* v. *Salamon*, 287 Conn. 509, 542, 949 A.2d 1092 (2008), this court concluded that "to commit a kidnapping in conjunction with another crime, a defendant must intend to prevent the victim's liberation for a longer period of time or to a greater degree than that which is necessary to commit the other crime." In *Salamon*, this court cautioned that its holding did "not represent a complete refutation of the principles established [in its] prior kidnapping jurisprudence." Id., 546. This court further observed that, in order to prove a kidnapping, "the state is not required to establish any minimum period of confinement or degree of movement." Id. The court noted, however, that when the "confinement or movement is merely incidental to the commission of another crime . . . the confinement or movement must have exceeded that which was necessary to commit the other crime." Id.

This court explained as follows: "[I]n other words . . . the test . . . to determine whether [the] confinements or movements involved [were] such that kidnapping may also be charged and prosecuted when an offense separate from kidnapping has occurred asks whether the confinement, movement, or detention was merely incidental to the accompanying felony or

whether it was significant enough, in and of itself, to warrant independent prosecution." (Internal quotation marks omitted.) Id., 547. "[A] defendant may be convicted of both kidnapping and another substantive crime if, at any time prior to, during or after the commission of that other crime, the victim is moved or confined in a way that has independent criminal significance, that is, the victim was restrained to an extent exceeding that which was necessary to accomplish or complete the other crime." Id.

In addition, the *Salamon* court listed a number of factors to be considered by the fact finder, in its determination of whether a separate crime existed, including the nature and duration of the victim's movement or confinement by a defendant, whether the movement or confinement occurred during the commission of a separate offense, whether the restraint was inherent in the nature of the separate offense, whether the restraint prevented the victim from summoning assistance, whether the restraint reduced the risk of detection, and whether the restraint created a significant danger or increased the victim's risk of harm independent of that posed by the separate offense. Id., 548.

On the basis of my review of these factors annunciated by this court in *Salamon*, I cannot conclude that, had the jury in the present case received the instruction in accordance with *Salamon*, there is a substantial likelihood that it would not have convicted the petitioner for kidnapping in the first degree. Accordingly, I would conclude that the petitioner has failed to meet his burden of establishing actual prejudice in this case. Therefore, I respectfully dissent.

I agree with the facts and procedural history set forth by the majority. I disagree with the majority that the petitioner's *Salamon* claim is not subject to the doctrine of procedural default. Instead, I agree with the Appellate Court that the procedural default rule should apply in the present case. "In essence, the procedural default doctrine holds that a claimant may not raise, in a collateral proceeding, claims that he could have made at trial or on direct appeal in the original proceeding and that if the state, in response, alleges that a claimant should be procedurally defaulted from now making the claim, the claimant bears the burden of demonstrating good cause for having failed to raise the claim directly, and he must show that he suffered actual prejudice as a result of this excusable failure." *Hinds* v. *Commissioner of Correction*, 151 Conn. App. 837, 852, 97 A.3d 986 (2014).

"In Connecticut, the procedural default rule set forth in [*Wainwright* v. *Sykes*, 433 U.S. 72, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977)], was adopted and applied to state habeas corpus petitions in *Johnson* v. *Commissioner of Correction*, 218 Conn. 403, 409, 589 A.2d 1214 (1991). Since *Johnson*, a habeas petitioner is barred from

asserting a claim in a habeas petition that could have been raised in the underlying criminal proceeding unless he is able to demonstrate good cause for having failed to raise such a claim and actual prejudice resulting from the failure to raise the claim in the criminal proceedings." *Hinds* v. *Commissioner of Correction*, supra, 151 Conn. App. 852–53.

The majority's conclusion that the petitioner's claim in the present case is not subject to the doctrine of procedural default effectively overrules this court's jurisprudence in *Johnson* and its progeny. I disagree with such an approach, particularly because no party has asked us to do so in the present case.

Accordingly, I would conclude that the petitioner in the present case "must shoulder the burden of showing, not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." (Emphasis omitted.) *United States* v. *Frady*, 456 U.S. 152, 170, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982). I further agree with the majority that "the petitioner would have to demonstrate that, with the proper instruction, there was a substantial likelihood that the jury would not have found the petitioner guilty of the crime of which he was convicted." (Internal quotation marks omitted.) Therefore, the outcome of this collateral proceeding depends on whether, if the jury had been given the charge now required by *Salamon*, there is a substantial likelihood that it would have convicted the petitioner of kidnapping in the first degree.

Turning to this question, we look to *Salamon* for guidance because, in *Salamon*, this court interpreted the intent element of the offense and found that "the proper inquiry for a jury evaluating a kidnapping charge is not whether the confinement or movement of the victim was minimal or incidental to another offense against the victim but, rather, whether it was accomplished with the requisite intent, that is, to prevent the victim's liberation." *State* v. *Salamon*, supra, 287 Conn. 532. The evidence need not establish that the restraint was disconnected from the sexual assault. Instead, the evidence must show that the perpetrator intended to restrain the victim beyond what was necessary to commit the sexual assault. Id., 542.

In the present case, the state clearly presented sufficient evidence from which a reasonable jury could find that the petitioner intended "to prevent the victim's liberation for a longer period of time or to a greater degree than that which is necessary to commit the other crime." Id.; see also *State* v. *Ward*, 306 Conn. 718, 737–38, 51 A.3d 970 (2012) (sufficient evidence existed to establish requisite intent where defendant moved "the victim away from the kitchen door to the more secluded bedroom"). In this collateral proceeding, the only rele-

vant evidence presented in the trial transcript shows that the petitioner's restraint of the sixteen year old victim was not "merely incidental to the accompanying felony [but was, rather] significant enough, in and of itself, to warrant independent prosecution." (Internal quotation marks omitted.) *State* v. *Salamon*, supra, 287 Conn. 547.

At the conclusion of the criminal trial, the jury credited the state's evidence and found the petitioner guilty of kidnapping beyond a reasonable doubt. That evidence showed that the petitioner identified the victim and then pursued her. When she noticed him—and realized the danger of the situation—the young woman panicked and began running. Unfortunately, the petitioner caught her. He then covered her mouth to stop her from screaming and summoning help. Indeed, he threatened to kill her if she renewed her screaming. Under these circumstances, it is more than reasonable to infer that the petitioner, "by engaging in this conduct, intended to frighten and subdue the victim to prevent her from struggling, trying to escape or summoning assistance." *State* v. *Ward*, supra, 306 Conn. 736. Next, while still in the parking lot, the petitioner knocked the victim to the pavement.[2] He could have committed the intended sexual assault at this moment. Instead, he chose to drag her across the parking lot. I disagree with the majority's analysis that this was a "continuous, uninterrupted course of conduct . . . ." Once the petitioner knocked the victim to the ground and restrained her, he could have accomplished the sexual assault, but instead he dragged the victim into the woods and sexually assaulted her.

The majority states that "the essential fact is the movement of [the victim]." I agree insofar as an analysis of the sexual assault is necessary. In my view, the kidnapping had already occurred when the victim was restrained and knocked down in the parking lot. The majority further states that the victim's "asportation from the spot where she was grabbed to the site of the sexual assault, however, appears to have been a matter of yards and accomplished in a matter of seconds." In my view, however, this statement does not pay sufficient deference to one of the key elements of *Salamon* which is that "the state is not required to establish any minimum period of confinement or degree of movement." *State* v. *Salamon*, supra, 287 Conn. 546. Therefore, the exact distance or degree of confinement is not essential to my analysis. Furthermore, the distance is not even among the factors this court identified as appropriate considerations in *Salamon*.[3]

In the present case, only after the petitioner had dragged the victim by her legs into the woods did he commence his sexual assault. It was at that point that the restraint "merely incidental to and necessary for" the commission of the sexual assault began. Id., 542.

That restraint commenced when he "sat on her chest with his feet on the outside of her arms and instructed [the victim] to open her mouth." *State* v. *Hinds*, 86 Conn. App. 557, 559, 861 A.2d 1219 (2004), cert. denied, 273 Conn. 915, 871 A.2d 372 (2005). The petitioner could have sexually assaulted the victim in the parking lot when he first saw her and ultimately subdued her. When she became suspicious, she ran. The petitioner chased, restrained, and threatened her. He delayed the sexual assault. He then threw her to the ground. After she lay helpless on the pavement, he dragged her across the parking lot and into a secluded location. It was only after he had transported her to this place, hidden in a dark area behind a large overgrown bush, that he imposed the restraint incidental to and necessary to accomplish the assault.[4] In moving the victim to this location, the petitioner increased the odds of the following: (1) that the victim would suffer injuries from being dragged across the hard surface of the pavement; (2) that any cries for help would not be heard by others; (3) that the victim would be further terrorized by the isolation; (4) that she would not be visible to any one passing by; and (5) that the petitioner could avoid detection. In other words, his movement of the victim "not only made it less likely that she would escape, [it] also made it less likely that the crime would be detected." *State* v. *Ward*, supra, 306 Conn. 737. Any other interpretation of the evidence, which has already been credited by the jury that found him guilty beyond a reasonable doubt, would result in granting the petitioner immunity for chasing the victim, halting her screams for help, threatening her life, knocking her to the ground, dragging her across a parking lot and inflicting injuries.

I further disagree with the majority's contention that "[t]here is no evidence that the risk of harm to [the victim] was made appreciably greater by the asportation in and of itself." Instead, I would conclude that a reasonable jury could infer that the very act of asportation of the victim constituted a risk of physical harm. In my view, no reasonable jury would find that the petitioner's actions merely were incidental or necessary to the commission of the sexual assault. On the basis of the evidence presented to the jury and the habeas court, the petitioner has failed to demonstrate that he suffered an "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." (Emphasis omitted.) *United States* v. *Frady*, supra, 456 U.S. 170.

Moreover, a consideration of the factors enumerated by this court in *Salamon*, which are important to determining whether the kidnapping constitutes a crime of independent legal significance, further supports my position. The amount of time that elapsed during the confinement and the length of asportation are not essential to the state's case. First, the nature and duration of the victim's confinement was distinct from the sexual

assault. The confinement occurred in the parking lot, while the sexual assault took place in the woods. Second, the movement or confinement did not occur during the commission of the sexual assault, but prior thereto. The victim was pushed to the ground and restrained in the parking lot. Subsequently, she was dragged by her legs across the parking lot to the woods. Third, the restraint in the parking lot was not inherent to the sexual assault in the woods. A separate restraint occurred in the woods. Fourth, the restraint certainly prevented the victim from summoning assistance. Fifth, the restraint reduced the petitioner's risk of detection because he dragged the victim from the illuminated parking lot to the darkness of the woods. I do not agree with the majority that "[a]lthough that movement took [the victim] from the lit parking lot to the adjacent dark ground by a bush, an act that undoubtedly reduced the risk of detection in one regard, it also brought [the victim] in very close proximity to an occupied residence in the lot adjacent to the parking lot." The essential point is that he had already restrained the victim in the parking lot. I would conclude that a reasonable jury could have found that the petitioner removed the victim from the lit parking lot to the darkness of the woods to avoid detection. Sixth, the restraint created a significant danger and increased the victim's risk of harm because the petitioner threatened to kill the victim and dragged her by the legs across the pavement of the parking lot. Indeed, the act of asportation itself certainly increased the risk of harm to the victim. A review of these factors demonstrates that the evidence in the present case established that the confinement and movement of the victim was not incidental to the assault, but was accomplished so as to prevent the victim's liberation.[5]

On the basis of the foregoing, I would conclude that all of the *Salamon* factors have been satisfied and that the petitioner has failed to prove that there is a substantial likelihood that the jury would not have found the petitioner guilty of kidnapping if it had been instructed pursuant to *Salamon*. Indeed, it is difficult to conceive that anyone could conclude that a separate offense, independent of the sexual assault, had not occurred when the petitioner restrained the victim in the parking lot. Certainly, if the sexual assault had never occurred, the petitioner's actions constituted the independent crime of kidnapping.

It is helpful to compare the present case to a few cases wherein this court determined that the defendant was entitled to a new trial, under *Salamon*, because a reasonable jury could conclude that the conduct alleged to be a kidnapping could be incidental to either a sexual assault or an assault. First, in *Salamon*, wherein the defendant had grabbed the victim on the back of the neck, causing her to fall onto the steps at a train station, held her down by her hair, punched the victim in the mouth and attempted to thrust his fingers down her

throat while she was screaming, this court reversed the kidnapping conviction and remanded for a new trial.[6] *State* v. *Salamon*, supra, 287 Conn. 513–15. Second, in *State* v. *Sanseverino*, 291 Conn. 574, 577–81, 969 A.2d 710 (2009), the court held that, upon reconsideration, the state could retry the defendant on the charge of kidnapping when the defendant had followed the victim to the back room of a bakery, grabbed her by her shoulders and pushed her against a wall and a metal shelving unit and then sexually assaulted her. Finally, in *State* v. *DeJesus*, 288 Conn. 418, 422–23, 953 A.2d 45 (2008), the defendant had sexually assaulted the victim on two separate occasions in two rooms of a supermarket. This court ordered a new trial so that the trial court could instruct the jury pursuant to *Salamon*. Id., 428. These cases are distinguishable from the present case because, unlike *Salamon*, *Sanseverino* and *DeJesus*, in the present case, there is a clearly defined separate incident unrelated to the ultimate sexual assault, and the petitioner removed the victim from the point of initial restraint in order to avoid detection. In both *DeJesus* and *Sanseverino*, the sexual assaults took place in a confined area and there was no evidence of any asportation. In *Salamon*, there was no movement from the point of the initial attack. In all of those previous cases, the issue was solely whether the amount of restraint exercised was incidental to the assaults or whether the length of the restraint went beyond the time necessary to commit the assaults. In my view, the present case is not a close question, but rather represents a fact pattern in which no reasonable jury could conclude that the initial restraint was incidental to the sexual assault.

A review of cases from other jurisdictions in which courts have found that there is sufficient evidence to support a separate conviction for kidnapping bolsters my conclusion that the petitioner has failed to demonstrate that there is a reasonable probability that, but for the lack of a *Salamon* instruction, the result of the trial would have been different. See, e.g., *Yearty* v. *State*, 805 P.2d 987, 993 (Alaska App. 1991) (defendant's restraint of victim "went significantly beyond that which was merely incidental to the sexual assault" where defendant pulled victim off of bike path, "dragged him to a secluded area several hundred feet away, and there held him captive for almost an hour"); *State* v. *Gordon*, 161 Ariz. 308, 316, 778 P.2d 1204 (1989) (affirming consecutive sentences on kidnapping and sexual assault charges because "the manner in which [the defendant] committed the kidnapping added to the victim's suffering and increased her harm or risk of harm beyond that inherent in the ultimate crime"); *Lee* v. *State*, 326 Ark. 529, 531, 932 S.W.2d 756 (1996) (affirming convictions for rape and kidnapping convictions where defendant began to follow victim, then grabbed victim around her neck while she was on public

sidewalk and "dragged her approximately one city block to the back of the school building where there was no light" where he raped her); *People* v. *Robertson*, 208 Cal. App. 4th 965, 986–97, 146 Cal. Rptr. 3d 66 (2012) (affirming defendant's kidnapping conviction where "record contain[ed] substantial evidence from which a reasonable trier of fact could conclude beyond a reasonable doubt that the movement was more than merely incidental and increased the risk of harm above and beyond that inherent in the crime of rape"); *People* v. *Johnson*, 26 N.E.3d 586, 589–90 (Ill. App.) (affirming conviction for kidnapping where the defendant forcibly moved victim from sidewalk to vacant lot, then to area between two garages off of alley), appeal denied, 26 N.E.3d 586 (Ill. 2015). Although in these cases, the courts were considering whether there was sufficient evidence to support a separate kidnapping conviction, they demonstrate that the petitioner in the present case has not met his burden of proving actual prejudice.

In the present case, the petitioner has failed to demonstrate that he suffered actual prejudice as a result of the trial court's failure to instruct the jurors, pursuant to *State* v. *Salamon*, supra, 287 Conn. 546, that a restraint that is "merely incidental to the commission of another crime" could not serve as the basis of a kidnapping conviction. The petitioner cannot satisfy his burden of demonstrating that it is reasonably likely that the jury would have acquitted him of the kidnapping charge if given the *Salamon* instruction. Indeed, the petitioner has failed to prove any of the *Salamon* factors in his favor. Instead, an analysis of all of the factors demonstrates that the petitioner committed a crime of independent legal significance when, prior to sexually assaulting this sixteen year old, he also increased the risk of harm to her and then dragged her into a secluded location to avoid detection. In my view, the petitioner has not met his burden of demonstrating actual prejudice and, therefore, I would conclude that the judgment of the Appellate Court should be reversed and that the case should be remanded to that court with direction to reverse the judgment of the habeas court and to remand the case to the habeas court with direction to deny the petition for a writ of habeas corpus.

Therefore, I respectfully dissent.

[1] *State* v. *Salamon*, 287 Conn. 509, 542, 949 A.2d 1092 (2008).

[2] The majority asserts that "[i]t is difficult to imagine how a sexual assault can be perpetrated without grabbing the victim, and the feasibility of accomplishing a sexual assault while the victim and the perpetrator are standing in the middle of a parking lot seems rather remote." See footnote 13 of the majority opinion. The majority seems to be asserting that dragging the victim behind the large overgrown bush in the adjacent lot was incidental to the sexual assault because the assault could not be performed while they were both standing. The majority's position, however, ignores the evidence in the present case. The evidence in the present case established that the petitioner knocked the victim to the ground while they were both still in the parking lot. Therefore, the asportation of the victim to the dark area behind a large overgrown bush in an adjacent yard was not necessary or incidental to the assault.

[3] The majority asserts that the victim's "asportation from the spot where

she was grabbed to the site of the sexual assault, however, appears to have been a matter of yards and accomplished in a matter of seconds." The majority does not provide and I cannot find, a citation for either of these measurements. Indeed, the only evidence in the file establishes that the area where the victim was first apprehended and knocked down was a lit parking lot with multiple cars and that she was dragged up onto grass and around to a dark area in the rear of a large overgrown shrub. Although the majority relies on the fact that the shrub was located in the yard of an occupied home, there is no evidence that the petitioner had any idea that the home was occupied. There is no evidence that there were any lights on inside the home. The only evidence regarding the home is that the police officer interviewed the occupant who said he was home, but that he usually did not hear many outside noises because of noise caused by window air conditioners installed in his home and the motor from the factory next door.

[4] The majority asserts that "the dissenting justices ignore the 'incidental to' language in *Salamon*" and "give no meaningful effect to the requirement that the additional restraint or asportation have 'independent criminal significance . . . .' " I disagree. In fact, it is the majority who does not appropriately examine the restraint in the present case in accordance with this court's instructions in *Salamon*. In *Salamon*, this court explained as follows: "Upon examination of the common law of kidnapping, the history and circumstances surrounding the promulgation of our current kidnapping statutes and the policy objectives animating those statutes, we now conclude the following: Our legislature, in replacing a single, broadly worded kidnapping provision with a gradated scheme that distinguishes kidnappings from unlawful restraints by the presence of an intent to prevent a victim's liberation, intended to exclude from the scope of the more serious crime of kidnapping and its accompanying severe penalties those confinements or movements of a victim that are merely incidental to and necessary for the commission of another crime against that victim. Stated otherwise, to commit a kidnapping in conjunction with another crime, a defendant must intend to prevent the victim's liberation for a longer period of time or to a greater degree than that which is necessary to commit the other crime." *State* v. *Salamon*, supra, 287 Conn. 542. Accordingly, my analysis of whether the restraint used by the petitioner against the victim in the present case was necessary for the commission of the sexual assault is exactly what *Salamon* instructs.

Furthermore, my analysis of the facts in the present case is consistent with this court's prior case law. See, e.g., *State* v. *Ward*, supra, 306 Conn. 738. In *Ward*, this court concluded that "the jury, which had been instructed on the applicable legal principles in accordance with *Salamon*, reasonably could have found that the defendant's confinement or movement of the victim was not merely incidental to the sexual assault." Id., 736. As grounds for our conclusion, we relied on the following facts: "The victim, who weighed a mere 100 pounds, testified that she could not escape because the defendant was twice her size and held her very tightly. By moving the victim away from the kitchen door, the defendant made the possibility of escape even more remote. From this testimony, it was reasonable for the jury to conclude that the defendant could have sexually assaulted the victim without threatening to kill her and without continuously holding the knife sharpening tool to her neck and, therefore, that the force used by the defendant exceeded the amount necessary to commit the sexual assault. It was also reasonable to infer that the defendant, by engaging in this conduct, intended to frighten and subdue the victim to prevent her from struggling, trying to escape or summoning assistance. In light of the evidence, the jury also reasonably could have concluded that the defendant increased the risk of harm to the victim by holding the pointed metal knife sharpening tool to her neck and by moving her away from the kitchen door, which not only made it less likely that she would escape, but also made it less likely that the crime would be detected. . . . Moreover, given the disparity in size and strength between the defendant and the victim, it was reasonable for the jury to conclude that the defendant did not need to move the victim from the kitchen in order to sexually assault her. If he intended to move her to a location that was more comfortable for him, he could have quickly moved her to the bedroom and onto the bed. Instead, he moved her from the kitchen to the bedroom, and ultimately onto the floor. Finally, although the incident lasted ten to fifteen minutes, the sexual assault itself lasted only two minutes." (Citation omitted; footnote omitted.) Id., 736–37. Ultimately, we concluded that "although the defendant did not confine the victim for a lengthy period of time or move her a significant distance, the facts and

circumstances of the present case, considered as a whole, support the jury's determination that the restraint of the victim was not merely incidental to or an inherent part of the sexual assault. Our decision is not based on any single fact, but on the cumulative effect of the evidence adduced at trial." (Footnote omitted.) Id., 738.

Similarly, in the present case, the petitioner did not need to threaten to kill her or drag her to the secluded dark area behind the overgrown bush in order to assault her. Accordingly, I would conclude that the facts establish that the petitioner restrained the victim beyond that which was necessary for and incidental to the sexual assault and that such restraint has independent criminal significance.

[5] The majority asserts that "the dissenting justices do not recognize that the degree and nature of the restraint or asportation bears on the ultimate question—the perpetrator's *intent* in taking these actions." (Emphasis in original.) I disagree. *Salamon* instructs that a number of factors are appropriate in making the ultimate determination of whether the confinement or movement of the victim was accomplished with the intent to prevent the victim's liberation. See *State* v. *Salamon*, supra, 287 Conn. 542. Indeed, the majority ignores these factors.

[6] In reaching this conclusion, however, this court explicitly stated that "a juror reasonably could find that the defendant's restraint of the victim was *not* merely incidental to his assault of the victim" noting, in particular, that "[t]he victim testified that the defendant, after accosting her, forcibly held her down for five minutes or more." (Emphasis added.) *State* v. *Salamon*, supra, 287 Conn. 549–50.