William Daniel RICHMOND, Jr. *v.* STATE of Arkansas

CR 90-3                                         791 S.W.2d 691

Supreme Court of Arkansas
Opinion delivered June 18, 1990
[Rehearing denied July 16, 1990.]

500

*Bob Keeter*, for appellant.

*Steve Clark*, Att'y Gen., by: *Ann Purvis*, Asst. Att'y Gen., for appellee.

TOM GLAZE, Justice. This is an appeal from the appellant's conviction of first degree murder. In a bifurcated trial, the jury sentenced the appellant to life imprisonment. Appellant raises eight points for reversal in his appeal. We find no error and therefore affirm.

Because the appellant does not challenge the sufficiency of the evidence on appeal, only the following facts are necessary for an understanding of this case. In the evening on February 22, 1989, David Masters was shot four times with a high powered rifle at close range while he was sitting in his pickup truck. Masters died from the shots to his head, neck and face, and according to the medical examiner's testimony, each shot would have been fatal. The victim was discovered in his truck the next day by road workers. The medical examiner estimated the time of death to have been between 8:00 and 8:30 p.m. on February 22, 1989. Earlier in the evening on February 22, the appellant and Mitchell Miles were seen talking with the victim.

Mitchell Miles, who claimed he was an eyewitness to the murder, testified for the state at the trial. According to Miles, at the appellant's request, he went to Masters' place of business earlier that day and told him that the appellant had gotten busted the night before while making a drug run for Masters. Miles also stated that he was with the appellant that night when they met the victim at a gas station and drove to where the killing occurred.

Miles stated that he was by the victim's truck talking with him when the appellant began to shoot. Masters had a syringe in his pocket when he was discovered, and the state's theory at the trial was the killing occurred because of a drug deal that when sour.

As his first point for reversal, the appellant argues that the trial court erred in not granting his motion for a mistrial when the wife of the victim had an emotional outburst during her testimony at the trial. After Martha Masters identified the appellant, she made the following unsolicited statement: "God. How could you do that to him? You devil." The trial court denied the appellant's motion for a mistrial but gave an admonishment to the jury for them not to consider the emotional outburst when deliberating on the case and for them to follow the court's instructions on the law.

We have frequently stated that a motion for a mistrial is an extreme and drastic remedy which will be resorted to only when there has been an error so prejudicial that justice cannot be served by continuing the trial. *See, e.g., King* v. *State*, 298 Ark. 476, 769 S.W.2d 407 (1989). The decision whether to grant a new trial is left to the sound discretion of the trial judge and will not be reversed in the absence of an abuse of discretion or manifest prejudice to the complaining party. *Id.* While generally a cautionary instruction to the jury like the one given in this case will take care of such unusual events, we have recognized that there are circumstances where statements or actions in the jury's presence are so highly prejudicial that they violate the accused's right to a fair trial, and no admonition to the jury can cure them. *Id.* But, such is not the case here.

Appellant cites to *Venable* v. *State*, 260 Ark. 201, 538 S.W.2d 286 (1976), wherein we stated that emotional outbursts by the relatives of murder victims and by victims of crimes are not unusual and are difficult to control. He states we found the trial court did not abuse its discretion in denying a mistrial in *Venable* because no accusatory remark or remarks were made at the accused. Here, he argues, Ms. Masters made accusatory remarks toward the appellant and for that reason, the mistrial should have been granted. We disagree.

In *Venable*, the outbursts were made by two witnesses, one of whom was a victim. One witness, after having identified the defendant at trial, then immediately exclaimed, "Oh, my God!

Why, Lord, why Donnie, why Donnie, why? Why would anybody want to kill him (crying)." Obviously, the witness's remarks in *Venable* were prompted by her having identified the defendant. Nevertheless, while we viewed the witness's remarks as being nonaccusatory, this court's decision to uphold the trial court's ruling denying a mistrial turned on its deference to the trial court's discretion in these matters. In this respect, we said the following:

> The trial judge must have been aware of all that took place in his presence and was in a better position to evaluate the impact of these occurrences than anyone else. He had a wide latitude of discretion in the control of the trial. Utilization of the extreme and drastic remedy of declaration of a mistrial should be a last resort.

We have upheld the trial court's denial of motions for mistrial where a crime victim fainted in the presence of the jury, *King*, 298 Ark. 476, 769 S.W.2d 407, and where a relative of a crime victim made an emotional outburst during her testimony, *Venable*, 260 Ark. 201, 538 S.W.2d 286. Here, Ms. Masters' statement was spontaneous and unsolicited. After making such an outburst, she was excused from the witness stand and a recess was immediately called. After the recess, the trial court carefully admonished the jury not to consider the outburst in any way in their deliberation of the case. Under such circumstances, we cannot say the trial court abused its discretion in not granting the appellant's motion for a mistrial.

Next, the appellant argues that the trial court erred in admitting into evidence a letter written by the victim to his parents while he was in a drug rehabilitation program. In addition to expressing remorse for the trouble he had caused his family, the victim, Masters, stated in this letter that his parents should tell the following to anyone who asked where he is: "We have got to lock up the dealers so the young ones don't have to go through all the misery and despair we have known for 20 years." The appellant argued below and now on appeal that the letter is hearsay and irrelevant evidence. We disagree.

Under A.R.E. Rule 801(c), hearsay is defined as a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the

matter asserted. Here, the letter was not entered into evidence to prove the truth of its contents but to show that Masters had a drug problem. *See generally* J. Weinstein & M. Berger, *Weinstein's Evidence*, § 801(c)[01] (1987). Therefore, it was not hearsay. Further, we do not believe the trial court abused its discretion in finding the letter relevant. *See Walker* v. *State*, 301 Ark. 218, 783 S.W.2d 44 (1990). The state's theory throughout this case is that Masters was killed by the appellant because of a drug deal that went sour. While the state is not required to prove motive, we have held that the state is entitled to introduce evidence showing all circumstances which explain the act, show a motive for acting, or illustrate the accused's state of mind. *Lair* v. *State*, 283 Ark. 237, 675 S.W.2d 361 (1984). Clearly, the state wanted the letter introduced to support its theory for the appellant's motive for killing Masters.

In the third issue, the appellant argues that the trial court erred in admitting five color photographs of the victim which were taken by the State Medical Examiner, Dr. Malak. At the hearing on the appellant's motion to suppress, the state proffered seven photographs. Upon reviewing the photographs, the trial court ruled that five were admissible, and on review, we cannot say that the trial court abused its discretion. *See Watson* v. *State*, 290 Ark. 484, 720 S.W.2d 310 (1986).

Unfortunately, a gruesome and heinous crime such as this one results in grotesque photographs. However, we have held that even if photographs are inflammatory in the sense that they show human gore replusive to the jurors, they are admissible within the discretion of the trial judge if they help the jury understand the testimony. *Harvey* v. *State*, 292 Ark. 267, 729 S.W.2d 406 (1987).

Here, the five photographs admitted show the bullet wounds in the victim's head, face and neck, and were used by Dr. Malak to explain the victim's cause of death to the jury. They are neither repetitive nor particularly inflammatory. We note that the appellant argues that the photographs were not relevant to any issue that was before the jury since he had advised the court that he would not contest either the nature or the cause of death. However, we have held that a defendant cannot prevent the state from offering proof simply by conceding a fact. *Williams* v. *State*,

300 Ark. 83, 776 S.W.2d 359 (1989). Further, we believe that the photographs are probative to the issue of the necessary elements of premeditation and deliberation for first degree murder. *See Robinson* v. *State*, 269 Ark. 90, 598 S.W.2d 421 (1980).

The trial court's ruling that the victim's death certificate was not admissible is the subject of appellant's fourth issue. At the trial, the appellant's defense was that he did not commit the murder and because of the estimated time of the victim's death, he could not have been present at the crime scene. To support this defense, the appellant presented testimony from a State Patrol Officer that the appellant had been an informant for the police on several occasions and on the night in question was at the Polk County Courthouse shortly before 8:30 p.m. to help in an undercover drug buy. Dr. Malak's testimony estimated the victim's time of death as being between 8:00 and 8:30 p.m.; the death certificate stated that the victim's time of death was approximately 8:30 p.m.

Even if we were to agree with the appellant that the trial court should have admitted the death certificate, we fail to see how the appellant was prejudiced. Dr. Malak testified candidly that there was no test available to determine the exact time of death. From his examination of the victim, he estimated the time of death to be between 8:00 and 8:30 p.m. The fact that the death certificate, prepared by Dr. Malak, states that the time of death is approximately 8:30 p.m. is not inconsistent with this testimony.

In sum, we feel that the appellant was able to get his defense before the jury through Dr. Malak's testimony, and therefore has not shown he was prejudiced. We will not reverse a conviction for an error which is unaccompanied by prejudice. *Stone* v. *State*, 290 Ark. 204, 718 S.W.2d 102 (1986). Further, we have held that the exclusion of evidence cannot be considered prejudicial if the same evidence is introduced by another witness and was before the jury for its consideration. *Hall* v. *State*, 286 Ark. 52, 689 S.W.2d 534 (1985).

Next, the appellant argues that the trial court erred in denying the appellant's motion to compel the state to elect between charging the appellant as a principle or an accomplice in the murder of Masters. There is no merit in the appellant's argument. An information charging the defendant with murder

can only charge one offense. Ark. Code Ann. § 16-85-404(a) (1987). However, the information may allege the modes and means of the offense in the alternative. *Id.* Here, the appellant was charged with one crime—murder in the first degree. But, in the information the state correctly charged the appellant with committing the offense by different means or modes, as either a principal or an accomplice. Further, the appellant failed to show how he was prejudiced since the criminal responsibility for the principal and accomplice are the same. *David* v. *State*, 295 Ark.131, 748 S.W.2d 117 (1988). Nor, do we believe that he could since the defense he presented would have applied to either a principal or an accomplice.

Likewise, we find no merit in the appellant's argument that the trial court erred in denying his request to cross-examine a witness concerning his arrest for carrying a pistol into the court room. Frank Kelley testified for the state at the trial, and on the day before he gave testimony he was arrested for attempting to enter the courtroom while carrying a pistol.

Below and here on appeal, the appellant argues that he should have been able to cross-examine him about this incident pursuant to A.R.E. Rule 608(b). This rule provides that specific instances of conduct if probative of truthfulness or untruthfulness may be inquired into on cross-examination concerning the witness's character for truthfulness or untruthfulness. The trial court ruled an arrest for carrying a pistol into the courtroom is not probative of whether the witness is truthful or not. We agree.

Appellant cites us to no case, nor do we know any where we have held that such an offense is probative of truthfulness or untruthfulness. In fact, our recent holding that an escape does not meet the requirements of being probative of truthfulness in Rule 608(b) suggests that we are not likely to do so. *Hamm* v. *State*, 301 Ark. 154, 782 S.W.2d 577 (1990).

We next address the appellant's argument that the trial court erred in sustaining the state's objection to appellant inquiring of a defense witness, Audrey Smith, as to the plans she had made with the appellant on the night in question. We summarily dismiss of this argument by noting that the appellant failed to proffer the testimony of the witness. We will not find error on a trial court's ruling that excludes evidence when there is

no proffer, unless the substance of the offer is apparent from the context in which the questions were asked. A.R.E. Rule 103(2); *Henderson* v. *State*, 279 Ark. 435, 652 S.W.2d 16 (1983). From the context of Audrey Smith's testimony, we cannot determine the substance of her testimony that was excluded. In fact, Ms. Smith's testimony was that the appellant failed to pick her up at work, therefore we would agree with the trial court that any testimony about plans with the appellant that evening would be irrelevant.

Finally, the appellant argues that the state failed to properly inform him of the specific crime he was charged with in its bill of particulars. Clearly, the appellant's argument has no merit. The state must provide a bill of particulars to the defendant upon request, and its purpose is to acquaint the defense with sufficient information so that he can prepare for trial. *Harris* v. *State*, 299 Ark. 433, 774 S.W.2d 121 (1989). Here, the state not only provided a bill of particulars but also an amended bill of particulars which provided the appellant in detail the crime for which he was charged.

For the reasons stated above, we affirm. Pursuant to Ark. Sup. Ct. R. 11(f), we have reviewed the record and find no reversible error.