Cite as 2023 Ark. 66

# SUPREME COURT OF ARKANSAS
No. CR-21-600

| | | |
|---|---|---|
| | | Opinion Delivered: April 20, 2023 |
| VANN BRAGG | APPELLANT | APPEAL FROM THE PHILLIPS COUNTY CIRCUIT COURT [NO. 54CR-19-18] |
| V. | | |
| STATE OF ARKANSAS | APPELLEE | HONORABLE E. DION WILSON, JUDGE |
| | | AFFIRMED. |

**SHAWN A. WOMACK, Associate Justice**

## I. *Facts*

On January 22, 2019, Vann Bragg and Jason Robinson fired shots at an SUV occupied by Casey Grant and Raymond Clark in the parking lot of the Victory Fuel station in Helena-West Helena. Grant died from his gunshot wounds, and Clark was shot in the arm but survived. Video-surveillance footage captured the shootings.

Bragg was charged with first-degree murder; first-degree battery; possession of a firearm by certain persons; and tampering with physical evidence. The tampering and firearm charges were subsequently dropped. Robinson pled guilty to first-degree murder and first-degree battery on November 16, 2020 and was sentenced to an aggregate term of thirty years in prison.

On March 19, 2021, Bragg filed a motion in limine seeking to exclude Helena-West Helena Detective Ashlee Tyler's in-court identification of Bragg as one of the shooters based on the surveillance footage captured by Victory Fuel's cameras. He argued that Detective Tyler's proposed testimony represented inadmissible lay-opinion testimony under Arkansas Rule of Evidence 701 (2021). The circuit court reserved the ruling on the motion until trial.

A jury trial took place June 22–24, 2021. During trial, after the Victory Fuel security-camera footage was introduced, Helena-West Helena Chief of Police James Smith testified that he was able to identify Bragg as one of the shooters in the video. The basis for this testimony was that Smith and Tyler responded to the gas station shortly after the shooting. Smith attempted to testify as to whom Tyler told him was involved, and Bragg made a hearsay objection. The objection was sustained. Smith attempted for a second time to testify as to Tyler's identification, and that was also met with an objection by Bragg that was sustained. The jury was then instructed to disregard any statements that Smith attributed to Tyler.

Co-Defendant Robinson then testified and admitted that he and Bragg opened fire on Grant's vehicle and fled the scene. He claimed that he was testifying because he wanted to "man up" for his actions. He also stated that they hid their firearms in the kitchen drawer of a house in town. Robinson led law enforcement to the home, where they recovered the weapons.

Detective Tyler then testified about the Victory Fuel surveillance videos. He testified that he processed and photographed the crime scene and then went inside the gas station to review surveillance footage of the incident. Tyler stated that he knows Bragg from having

previously worked with Bragg's father in 2015. He testified that he could identify the shooter from the footage. Bragg then renewed his motion in limine and argued that Tyler should be excluded from identifying him due to his lack of knowledge. The circuit court denied the motion, noting that Smith's testimony identifying Bragg on the video had already been admitted and that Bragg's arguments went to weight and not admissibility. Tyler ultimately testified that he believed Bragg was one of the shooters.

Tyler testified that the store clerk played the surveillance footage of the charged acts for him, and he realized with "no doubt" that Bragg was one of the shooters when he first got out of the car. Tyler referenced Bragg's body type and the fact that he and Bragg are the same height. He indicated that another identifying characteristic was that Bragg's habit of pulling on or stroking his goatee. Tyler also said he knew that the driver of the shooter's vehicle was Bragg's brother, Dedrick, and that the two were "always together." Tyler then said that his child's mother had previously dated Dedrick for a few years. Finally, when being questioned about his interactions with Robinson, Tyler testified that Robinson "told us that he was involved with it, and he took us where he ran to and took this gun and placed it at." Bragg objected to the statements as hearsay, but the objection was overruled.

Raymond Clark then testified for the State. He described the incident and his injuries and acknowledged that he saw the shooter and could identify him. When the State asked him to identify the person who shot him at the gas station on the date in question, Clark responded by stating:

These people know exactly who I'm talking about. Y'all know exactly who I'm talking about. They don't have no – they don't have – they don't have – they don't have nobody in custody, but the people they got charged with it or trying to charge with it. At least this camera footage, this camera footage right here, man, this stuff ain't no rocket science, like come on, man. I really feel like –

A woman in the audience then shouted: "Just say his name!" The prosecutor told Clark to "[g]ive me the name of the person who shot you," and Clark identified "Vann and his brother and whoever else, man." Trial counsel later clarified that it was the decedent's mother who made this outburst.

Bragg moved for a mistrial on the basis of the decedent's mother's "extreme outburst" during Clark's testimony, and the circuit court denied this motion. Bragg twice renewed the motion without success. At the close of the State's evidence, Bragg moved for a directed verdict on all counts, which was denied. He renewed this motion but was again unsuccessful.

Bragg was found guilty of first-degree murder and first-degree battery. At the sentencing phase, the State argued:

Remove him from this society. That's what needs to happen. And it won't – if you remove him from this society, from us, he won't be our neighbor anymore. We won't have to worry about him anymore, but I can tell you this, every person in this community like Vann Bragg will know about it tomorrow, and they'll be thinking just a little bit more before they run up on somebody –

Bragg objected, seeking an admonishment to the jury on the grounds that the State was encouraging the jury to set an example of him. In response, the court stated: "[t]he objection by the defendant as to sending a message, I think it's been covered, so I think it's overkill." The prosecutor ended his closing by saying: "Protect our neighborhood and protect our community. Do what's right. You know what it is. Thank you, ladies and

gentlemen." The jury then sentenced Bragg to maximum terms of life imprisonment and forty years. The circuit court ordered that the sentences would run concurrently. Bragg was declared indigent, and he filed a notice of appeal on July 19, 2021.

## II. *Appellate History*

On February 1, 2022, Bragg filed a motion to stay briefing and reinvest jurisdiction with the circuit court to consider a petition for writ of error coram nobis. We granted the motion and reinvested jurisdiction on March 10, 2022. Bragg filed a petition for writ of error coram nobis based on the State's failure to disclose material evidence in the circuit court on March 15, 2022. Bragg argued that the State failed to disclose that co-defendant Robinson was offered a reduced conviction and sentence in exchange for his testimony against Bragg at Bragg's jury trial.

On August 24, 2021, an amended sentencing order was filed in Robinson's case, reducing his conviction to murder in the second degree and his sentence to twenty years. The circuit court held an evidentiary hearing on Bragg's petition for writ of error coram nobis on April 11, 2022. Bragg's trial attorney, Kyle Stoner, testified that he received an affidavit from codefendant Robinson several months before Bragg's trial stating that Bragg was not involved in the charged acts.

Deputy prosecuting attorney Charles Halbert testified that he and elected prosecutor Todd Murray met with Robinson in the days leading up to or during Bragg's jury trial. Halbert stated that it was just the three of them and that Robinson's lawyer was not present. Murray testified he made the decision to submit an amended sentencing order reducing

Robinson's conviction and sentence after hearing his testimony at trial.  Specifically, Murray testified:

> After listening to Mr. Robinson after we spoke at the jail, and then also listening to his testimony at trial, I made the decision that I didn't think we had a just result in his sentence, and I felt compelled to suggest to the court that the sentence should be revised.

On April 27, 2022, the circuit court entered an order denying Bragg's petition.  It found that "none of the witnesses called at the hearing established that Jason Robinson testified in exchange for a *quid pro quo* deal; and that the State did not fail to disclose material evidence[.]"  Bragg then filed an amended notice of appeal on May 3, 2022 to add the denial of his petition for writ of error coram nobis.  The supplemental record was then tendered with this court on July 28, 2022.

### III.  *Arguments on Appeal*

### A.  Detective Tyler's Identification Testimony

First, Bragg claims that the circuit court erred by permitting Detective Tyler to testify that Bragg was one of the shooters on the Victory Fuel surveillance-video footage.  The State claims that Bragg's argument is unpreserved and meritless.  We agree with the State that this argument was not preserved.

We have continuously enforced our well-established law that arguments not raised at trial will "not be addressed for the first time on appeal, and that parties cannot change the grounds for an objection on appeal, but are bound on appeal by the scope and nature of the

objections and arguments presented at trial." *Campbell v. State*, 319 Ark. 332, 333, 891 S.W.2d 55, 56 (1995).

Here, Bragg argues that Detective Tyler's identification was not sufficiently reliable and therefore violated his right to due process. However, in the court proceedings below, Bragg argued that Detective Tyler's identification was impermissible lay-opinion testimony. These are two distinct arguments that must be analyzed under different standards of review. *See Moore v. State*, 304 Ark. 558, 560, 803 S.W.2d 552, 553 (1991) (identification challenges are reviewed for clear error); *Moore v. State*, 362 Ark. 70, 75, 207 S.W.3d 493, 497 (2005) (challenges to the admission of lay-opinion testimony are reviewed under an abuse-of-discretion standard). Because Bragg has changed his argument, we will not consider it.

### B. Detective Tyler's Testimony about the Statements Robinson Made While Leading Police to His Gun

Second, Bragg argues that Detective Tyler's testimony about statements Robinson made while leading police to his gun were inadmissible hearsay. The State argues that it was not hearsay or, in the alternative, was a harmless error.

Arkansas circuit courts have wide discretion in making evidentiary rulings, and this court will not reverse a ruling on the admissibility of evidence absent an abuse of discretion. *Jackson v. State*, 375 Ark. 321, 340, 290 S.W.3d 574, 587 (2009). An abuse of discretion is a high threshold that does not simply require error in the circuit court's decision but requires that the circuit court act improvidently, thoughtlessly, or without due consideration. *Collins v. State*, 2019 Ark. 110, 571 S.W.3d 469.

Nothing in the record suggests that the circuit court acted improvidently, thoughtlessly, or without due consideration by permitting Detective Tyler to testify about statements Robinson made as he was leading police to his gun. Additionally, Bragg cannot successfully claim that he was sufficiently prejudiced by the admission of the testimony to warrant reversal. Robinson's statements to Detective Tyler were not dispositive to the overall disposition of the verdict. Other evidence, such as the Victory Fuel security-camera footage, Clark's in-court testimony, and Detective Tyler's identification, all contributed to the verdict. Therefore, we affirm the circuit court's decision on this point.

## C. Exclamation of the Decedent's Mother

Appellant next argues that the circuit court abused its discretion by denying Bragg's motion for mistrial based on the decedent's mother calling out to Clark to identify Bragg by name during his testimony in front of the jury. The State argues that the motion was untimely, or in the alternative, the circuit court properly denied the motion.

"[A] mistrial is an extreme and drastic remedy which will be resorted to only when there has been an error so prejudicial that justice cannot be served by continuing the trial." *Richmond v. State*, 302 Ark. 498, 501, 791 S.W.2d 691, 693 (1990). The circuit court is in a favorable position to evaluate potential prejudice, so we give general deference to its discretion in these matters. *Id.* at 501–02, 791 S.W.2d at 693–94. We will not reverse a decision in the absence of an abuse of discretion or manifest prejudice to the complaining party. *Id.* Our jurisprudence is clear that a mistrial is not required when there is a non-accusatory, spontaneous outburst from the audience. *Richmond v. State*, 302 Ark. 498, 791

S.W.2d 691 (1990). Here, appellant has not sufficiently identified where or how the circuit court abused its discretion in denying the motion. We affirm the circuit court's decision on this point.

## D. The Prosecutor's Statements During Sentencing

Appellant next argues that the circuit court erred by permitting the State to "implore the jury to fix the community's ills and protect the community with their sentences." Appellee argues that Bragg's arguments are not preserved or, in the alternative, are irreversible.

A circuit court has broad discretion to control counsel in closing arguments. *Muldrew v. State*, 331 Ark. 519, 522, 963 S.W.2d 580, 581 (1998). Again, we do not overturn a circuit court's ruling on an objection to a closing argument without a manifest abuse of discretion. The primary purpose of sentencing a person convicted of a crime is to deter criminal behavior and foster respect for the law. *Love v. State*, 324 Ark. at 532, 922 S.W.2d 701, 704 (1996). A "sending-a-message" theme in sentencing does not warrant overturning the circuit court's decision. Therefore, we affirm on this ground.

## E. Bragg's Coram Nobis Petition

In his final argument, Bragg argues that the circuit court erred by denying his petition for writ of error coram nobis because the State "withheld information about a backend deal for Bragg's co-defendant Jason Robinson[.]" While conceding that a circuit court generally lacks authority to modify a defendant's sentence and conviction once it is entered, the State

argues that the circuit court did not abuse its discretion by denying Bragg's coram nobis petition.

Typically, a circuit court does not have the authority to modify a defendant's convictions and sentences once they are entered. *Gavin v. State*, 354 Ark. 425, 429, 125 S.W.3d 189, 191 (2003). Additionally, we review a circuit court's denial of a petition for writ of error coram nobis under an abuse-of-discretion standard. *White v. State*, 2015 Ark. 151, at 4, 460 S.W.3d 285, 288. The writ "is an extraordinarily rare remedy, more known for its denial than its approval." *Id.* at 3, 460 S.W.3d at 288. In coram nobis proceedings, there is a strong presumption that the conviction is valid. *Smith v. State*, 2018 Ark. 396, at 2, 562 S.W.3d 211, 213. The petitioner bears the burden of demonstrating a fundamental error of fact extrinsic to the record. *Pugh v. State*, 2019 Ark. 319, at 2, 587 S.W.3d 198, 200–01. The writ is only available to address (1) insanity at the time of trial; (2) a coerced guilty plea; (3) material evidence withheld by the prosecutor; (4) a third-party confession made during the time between conviction and appeal, or (5) faulty hair-comparison analysis. *Martin v. State*, 2018 Ark. 344, at 4, 7–8; *see also McKinney v. State*, 2020 Ark. 226, at 2 n.1, 602 S.W.3d 85, 87 n.1 (recognizing the fifth ground for coram nobis relief as "repudiated expert testimony"). In order to succeed on a claim that the prosecutor withheld material evidence, Bragg was required to demonstrate that (1) the evidence at issue was favorable to him, either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued. *Joiner v. State*, 2019 Ark. 279, at 4, 585 S.W.3d 161, 165.

Here, the record shows that the prosecutor met with Robinson (a key witness to the prosecution) without his attorney present. Robinson later testified against Bragg and identified him as the second shooter. Robinson stated that he pled guilty to first-degree murder and received thirty years' imprisonment because he was "manning up" for his crime and "just telling the truth about what happened as far as me, you know, what happened with the situation."

Following Bragg's trial, prosecutor Todd Murray testified that he made the decision to submit an amended sentencing order reducing Robinson's conviction and sentence after hearing his testimony at trial. The circuit court modified Robinson's conviction and sentence after it was entered. Robinson's conviction was changed to second-degree murder and his sentence was reduced from thirty years to twenty years. The circuit court ultimately denied the petition for writ of error coram nobis based on the lack of evidence of a *quid pro quo.* We affirm the denial of the petition but caution prosecutors to avoid moving for unauthorized sentencing and conviction modifications.

IV. *Rule 4-3(a) Review*

Because Bragg received a sentence of life imprisonment, the record has been reviewed for all errors prejudicial to him, as required by Arkansas Supreme Court Rule 4-3(a). No reversible error was found.

Affirmed.

*Lassiter & Cassinelli*, by: *Michael Kiel Kaiser*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Joseph Karl Luebke*, Ass't Att'y Gen., for appellee.