Cite as 2026 Ark. 60

# SUPREME COURT OF ARKANSAS

**No.** CR–25–166

| | | |
|---|---|---|
| JOSEPH FAULKNER SR. | | **Opinion Delivered:** January 29, 2026 |
| | APPELLANT | APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. 26CR-22-554] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE RALPH C. OHM, JUDGE |
| | APPELLEE | <u>AFFIRMED</u>. |

**NICHOLAS J. BRONNI, Associate Justice**

Joseph Faulkner Sr. appeals his conviction for raping Minor Victim 1. He challenges the sufficiency of the evidence supporting his conviction; argues the circuit court abused its discretion in denying his motion for a continuance; claims the circuit court erroneously admitted electronic messages that he sent to MV1 and other messages that he sent to MV1's mother about raping Minor Victim 2 and Minor Victim 3; argues the circuit court wrongly allowed MV3 to testify that Faulkner had raped her; and asserts that, even if the various evidentiary errors he claims did not prejudice him, they did in total. Faulkner also appeals his sentence, claiming that his life sentence violates the Eighth Amendment to the United States Constitution and article 2, section 9 of the Arkansas Constitution. We reject Faulkner's arguments and affirm both his conviction and his sentence.

## Facts and Procedural Background

Faulkner has a history of targeting, isolating, and raping children in his care. A jury convicted him of raping MV1, his then-live-in-girlfriend's 14-year-old daughter, and the

circuit court sentenced him to life in prison. The facts are deeply disturbing, and while we recount only those facts necessary to resolve this appeal—even those facts are not for the faint of heart.

1. MV1 has not had an easy life. She was separated from her parents at a young age and placed into foster care. She later moved in with her paternal grandmother, and in 2017, MV1 began having supervised visits with her mother, Tracy Tippit. When MV1's grandmother passed away later that year, MV1 moved in with her father. She also started having unsupervised visits with Tippit.

Faulkner was Tippit's live-in boyfriend, and Faulkner concedes that because of his relationship with MV1's mother, he had some authority over MV1. MV1 initially had a positive impression of Faulkner, describing him as an upgrade from the men her mother had previously dated. That changed in the summer of 2017 when Faulkner began sending MV1 sexually explicit electronic messages. Among many other things, those messages asked MV1 to wear suggestive clothing and send him photographs of herself, told MV1 that she "ha[d] a lot to teach [him]," and concluded, "We're gonna bang" and "I'd totally f--k you."

Then one night, when MV1 was at Tippit's home, Faulkner plied her with alcohol and raped her. MV1 testified that, during a game of dominos, Faulkner gave her multiple beers. When MV1 became intoxicated, she retreated to her mother's bed—where it was not uncommon for her to sleep with Tippit in the middle of the bed and Faulkner on the opposite side. During the night, MV1 woke to find that her pants and underwear had been pulled down, Faulkner's hands were on her breasts, and Faulkner was orally raping her. She slapped Faulkner, and he returned to his side of the bed.

2

MV1 began crying, and her mother woke up. When Tippit asked her what had happened, MV1 was too upset to speak. So she grabbed her phone and typed out a description of Faulkner's attack. Tippit did not believe MV1, and she instructed her daughter not to talk about the attack. Tippit did not contact the police.

Four years later, Tippit's view changed when Faulkner sent her a series of text messages describing how he had been raping MV2, his 7-year-old daughter, and that he had previously raped MV3, his other daughter, when she was younger. In those messages, Faulkner also compared his experiences raping MV2 and MV3 and begged Tippit to take MV3—who was now 18 years old—away so that he could rape MV2 again. He offered to record his latest rape of MV2, asked Tippit to take photographs of MV2, and requested that she show MV2 explicit images. Tippit responded that she would not take MV3 away or participate in the rape, but she did not contact the police.

Eventually, the messages prompted Tippit to remember her 2017 conversation with her daughter, MV1. Now, believing MV1 had told her the truth, Tippit took screenshots of the messages that Faulkner had sent her. She then sent those screenshots to her own father, who forwarded them to MV1. Upon seeing those messages, MV1 froze, suddenly realizing that she was not Faulkner's only victim and that Faulkner was now targeting even younger children. MV1 showed the messages to her therapist, and the therapist contacted law enforcement.

2. Faulkner was arrested and charged with raping MV1. As Faulkner awaited trial, law enforcement began investigating whether he had also raped MV2 and MV3. Then four days before his trial, Faulkner was arrested, charged with raping MV3 in a separate case, and

3

returned to jail. Claiming the new charges made him a target of other inmates and caused him to lose sleep, Faulkner asked to continue his trial. The circuit court denied that motion, and the trial began as scheduled.

As relevant here, at trial, Faulkner objected to the admission of the electronic messages that he had sent MV1 in 2017, screenshots of the messages that he had sent Tippit in 2021, and MV3's testimony that Faulkner had sexually abused her as a child. With respect to the electronic messages and screenshots, Faulkner argued both should be excluded because there was no way to determine who wrote and sent the messages. But Tippit and MV1 confirmed that the messages were from accounts that Faulkner had previously used to communicate with them and that the language was consistent with how Faulkner typically wrote messages. As a result, the circuit court overruled Faulkner's objection, concluding it went more to weight than admissibility.

On MV3's testimony, Faulkner claimed that testimony involved dissimilar, uncharged crimes that were remote in time and, as such—even if allowed under the pedophile exception to Arkansas Rule of Evidence 404(b)—it should be excluded on the grounds that it was more prejudicial than probative. The State responded that MV3's testimony showed a pattern of targeting young girls and that no prejudice was undue. The circuit court agreed with the State, and MV3 testified about how Faulkner drank, consumed drugs, and systematically abused her as a young child. She described how Faulkner would record her dressing, make her watch pornography purportedly depicting a father and stepdaughter or father and daughter, and shower her with unwanted attention beginning in the seventh grade. MV3 also described how Faulkner forced her to have oral sex with him

4

almost daily and then ultimately—after she turned 13—forced her to have sexual intercourse with him. Moreover, she testified that Faulkner threatened that if she ever told anyone what had happened to her, she would never see her siblings again. And MV3 told the jury that the abuse had continued until one night, when Faulkner had gotten into a physical altercation with her mother, the police arrived and took Faulkner away, and she told her mother about the abuse. Her mother contacted the police, but no charges followed.

In addition to MV3's testimony, MV1 testified about how Faulkner had raped her in 2017. Tippit and several other witnesses also testified. The jury convicted Faulkner of rape. MV1 and MV3 then both testified again during the sentencing phase, recounting the toll Faulkner's abuse had taken on their lives. The circuit court sentenced Faulkner to life in prison. This appeal followed.

**Discussion**

Faulkner challenges his conviction on sufficiency and evidentiary grounds, and he challenges his sentence on constitutional grounds. Both sets of claims lack merit, and we affirm both Faulkner's conviction and his sentence.

*Faulkner's Challenge to His Conviction*

1. We begin with Faulkner's challenge to his conviction and his argument that his rape conviction was not supported by substantial evidence. To convict Faulkner of rape, the State had to prove that: (1) MV1 was a minor; (2) Faulkner was MV1's guardian; and (3) Faulkner "engage[d] in sexual intercourse or deviate sexual activity with" MV1. Ark. Code Ann. § 5-14-103(a)(4)(A)(i). On appeal, Faulkner only disputes the jury's conclusion

5

that he was MV1's guardian—not that she was a minor or that he sexually attacked her. We reject his argument.

Faulkner argues that the State failed to prove that he was MV1's guardian because it did not demonstrate that he had "full authority" over her. But that is not the legal standard for determining guardianship. Rather, as relevant here, Arkansas law defines a guardian as "a parent, stepparent, legal guardian, legal custodian, foster parent, or any person who by virtue of a living arrangement is placed in an apparent position of power or authority over a minor." Ark. Code Ann. § 5-14-101(4). Thus, to prove this element of the offense, the State only needed to demonstrate that Faulkner was in an apparent position of authority by virtue of his living arrangement with MV1—not that he had complete or total authority over her. *See McDaniels v. State*, 2014 Ark. 181, 432 S.W.3d 644 (where minor routinely stayed at offender's house, the offender was in a position of apparent authority).

Applying that standard, the State met its burden. The record establishes that MV1 routinely stayed with Tippit and Faulkner and that, as Tippit's live-in boyfriend, Faulkner maintained apparent authority over MV1. Indeed, Faulkner concedes as much, acknowledging that he enjoyed at least "some authority" over MV1. That is sufficient. So we reject Faulkner's attempt to change the legal standard and conclude that the jury's verdict was supported by substantial evidence.

2. Faulkner next argues that the circuit court abused its discretion when it denied his motion for a continuance after he was charged with raping MV3. He argues that the new charges filed on the eve of trial made him a target of other inmates, prevented him from sleeping, and ultimately rendered him unable to assist his counsel and participate in his

own defense. Arkansas Rule of Criminal Procedure 27.3 requires "good cause" for a continuance, and on review, we ask whether the circuit court abused its discretion in denying a continuance. *Thorne v. State*, 269 Ark. 556, 560, 601 S.W.2d 886, 889 (1980) (citing *Ungar v. Sarafite*, 376 U.S. 575 (1964)).

No such abuse of discretion exists here. To start, contrary to Faulkner's claims, the circuit court found that Faulkner was responsive, involved, and able to assist his counsel throughout the trial. Faulkner does not point to anything that would undermine that finding. Nor does he point to any authority requiring a circuit court to continue a trial simply because—as he argues—the defendant has been charged with new crimes in a separate case, other inmates are unpleasant to him, or he loses sleep. Indeed, it would hardly be surprising if many defendants find it difficult to sleep before trial, and that alone is not a basis for a continuance. Moreover, where, as here, the defendant had long been aware that he might be charged with additional offenses in a separate case, it is hard to see how those additional charges could have interfered with his ability to assist his counsel. We thus reject Faulkner's argument.

3. Faulkner also argues that the circuit court erroneously admitted the electronic messages that he sent to MV1 and the screenshots of the messages that he sent to Tippit describing how he had raped MV2 and MV3. He argues that those highly explicit messages should not have been admitted because the State failed to adequately demonstrate that he was the person who sent them. We review such evidentiary claims for abuse of discretion, and we find no error—let alone an abuse of discretion—here.

7

Faulkner's authentication objection is governed by Arkansas Rule of Evidence 901(a). Under that rule, evidence is admissible so long as there is "evidence sufficient to support a finding that the matter in question is what its proponent claims." That is a flexible standard, and as relevant here, Rule 901(b) explains, evidence may be authenticated by, among other things, witness testimony, comparison with other evidence, the evidence's "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances," and—in the case of telephone communications—evidence that a number was assigned to a particular individual.

Applying that standard here, we conclude that the explicit messages and screenshots that Faulkner challenges were clearly admissible. First, MV1 testified that the messages she received were from an account that she had previously used to communicate with Faulkner and that they were consistent with how Faulkner typically messaged her. Second, Tippit testified that the screenshots of the messages about MV2 and MV3 came from her phone, that she took those screenshots, that they came from a number she regularly used to communicate with Faulkner, and that the grammar and mannerisms in the text messages generally matched how Faulkner communicated with her. That testimony was more than sufficient for admission.

In arguing the contrary, Faulkner largely ignores Rule 901 and focuses instead on a line of cases about evidence tampering. *See Davis v. State*, 350 Ark. 22, 86 S.W.3d 872 (2002); *Guydon v. State*, 344 Ark. 251, 39 S.W.3d 767 (2001). But Faulkner never claimed that the messages had been tampered with, and those cases simply do not apply here. Nor, contrary to Faulkner's suggestion, was cellular data from the various devices or a witness

who saw him type the messages required for admission. Instead, Rule 901 only requires evidence linking Faulkner to the messages, and Tippit's and MV1's testimony met that standard. Anything beyond that—including evidence that the State failed to extract complete cellular data or that the State did not have a witness who saw Faulkner type the messages—goes to weight and is for the jury to resolve. Faulkner's authentication argument thus fails.

4. Faulkner next claims that the circuit court erred when it failed to exclude MV3's testimony that Faulkner groomed and repeatedly raped her. Arkansas Rule of Evidence 404(b) generally bars the State from using "other crimes, wrongs, or acts" to show that a defendant acted in a particular manner. But at the same time, that rule permits the State to use such evidence to prove other things, like "motive, opportunity, intent, preparation, [and] plan[ning]." Ark. R. Evid. 404(b). Moreover, where, as here, the crime charged concerns the sexual assault of a minor, the "pedophile exception" to Rule 404(b) "allows the State to introduce evidence of the defendant's similar acts with . . . other children" to show "proclivity." *Craigg v. State*, 2012 Ark. 387, at 7, 424 S.W.3d 264, 268; *accord Free v. State*, 293 Ark. 65, 71, 732 S.W.2d 452, 455 (1987) ("[W]e will allow such testimony to show similar acts with the same child or other children in the same household when it is helpful in showing a proclivity . . . ." (internal quotation marks omitted)). And MV3's testimony, as the circuit court concluded, is admissible under that exception.

Nevertheless, Faulkner contends that MV3's testimony should have been excluded under Arkansas Rule of Evidence 403 because it was substantially more prejudicial than probative. That argument is entirely meritless. To start, MV3's testimony was highly

9

relevant. Her testimony demonstrated Faulkner's proclivity to target young girls in his own household, and it illustrated that Faulkner has a pattern of using his authority to isolate and sexually abuse young girls. And while Faulkner argues that MV3's testimony should have been excluded because—unlike his single attack on MV1—it involved years of abuse and his own daughter, neither of those differences somehow suggest that Faulkner lacks a proclivity to target young girls in his household. Just the opposite: it shows a pattern of doing just that.

So while MV3's testimony was certainly prejudicial (indeed, highly so), it was not unfairly prejudicial. Instead, the same thing that made MV3's testimony prejudicial also made it highly probative. That is not a basis for excluding MV3's testimony, and as such, the circuit court did not err in allowing MV3 to testify.

5. Finally, Faulkner raises an unpreserved cumulative-error objection—claiming that even if he was not prejudiced by any single error, he suffered prejudice in the aggregate. But as explained above, the circuit court did not err in admitting MV3's testimony, admitting the electronic messages that he sent to MV1 and Tippit, or in denying his request for a continuance. As such, there is no cumulative error, and we reject this claim too.

*Faulkner's Sentencing Challenge*

Faulkner's unpreserved sentencing challenge fares no better. He argues that his life sentence violates both the Eighth Amendment to the federal constitution and article 2, section 9 of the Arkansas Constitution. First, he argues that the jury wrongly considered MV3's testimony in determining his sentence. That argument lacks merit because—while we agree that MV3's testimony likely influenced the sentence—Arkansas law allows the jury

10

to consider "[r]elevant character evidence" in determining a sentence.  *See* Ark. Code Ann. § 16-97-103.  And Faulkner cannot plausibly claim that evidence that he systematically abused and raped his daughter is not relevant character evidence.  Nor does he even attempt to explain how allowing the jury to consider that evidence violated either the federal or the state constitution.  So to the extent Faulkner means to suggest that evidence of other acts was not admissible or otherwise unlawfully influenced his sentence, he is wrong.

Second, Faulkner argues that his sentence was disproportionate and runs afoul of *Weems v. United States*, 217 U.S. 349 (1910), and its progeny.  But *Weems* and the cases that followed—like *Solem v. Helm*, 463 U.S. 277 (1983), and *Ewing v. California*, 538 U.S. 11 (2003)—all involved defendants who received or faced large, lengthy sentences for what the Supreme Court labeled relatively minor, nonviolent offenses.  For instance, the defendant in *Weems* was sentenced to fifteen years' hard labor for falsifying documents, the defendant in *Solem* was sentenced to life in prison for check fraud, and the defendant in *Ewing* faced a life sentence for stealing three golf clubs.  In each case, our federal colleagues concluded the sentences were disproportionate to the offense, and at least for federal law purposes, we are bound by that holding.  By contrast, rape of a child is neither a minor offense nor a nonviolent one.  As such, neither *Weems* nor any of the cases following *Weems* supports Faulkner's argument that his life sentence violates the federal constitution.

We likewise reject Faulkner's unsupported and corresponding argument that a life sentence for a child rape runs afoul of the evolving standards of decency framework that we

11

are bound by the decisions of our federal colleagues to apply under the federal constitution.[1]

Nor does Faulkner provide any authority for his argument that his sentence violates the Arkansas Constitution.

Affirmed.

BAKER, C.J., concurs.

*Scholl Law Firm, P.L.L.C.*, by: *Scott A. Scholl*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Jason Michael Johnson*, Ass't Att'y Gen., for appellee.

---

[1]If anything, the trend is in the other direction with states—including Arkansas—recently passing legislation allowing juries to sentence child rapists to death. That trend undermines the Supreme Court's decision in *Kennedy v. Louisiana*, 554 U.S. 407 (2008), and suggests that case is ripe for reconsideration by the Court. *See* S.B. 375, 95th General Assem., Reg. Sess. (Ark. 2025); Ark. Code Ann. § 5-14-114(b)(1); H.B. 1297, 125th Legislature, Reg. Sess. (Fla. 2023); S.B. 1834, 113th General Assem., Reg. Sess. (Tenn. 2024); H.B. 380, 68th Legislature, Reg. Sess. (Idaho 2025); S.B. 599, 60th Legislature, Reg. Sess. (Okla. 2025).