Cite as 2026 Ark. 38

# SUPREME COURT OF ARKANSAS

**No.** CR–25–204

| | | |
|---|---|---|
| VANN BRAGG | | **Opinion Delivered:** February 19, 2026 |
| | APPELLANT | APPEAL FROM THE PHILLIPS COUNTY CIRCUIT COURT [NO. 54CR-19-18] |
| V. | | |
| | | HONORABLE E. DION WILSON, JUDGE |
| STATE OF ARKANSAS | | |
| | APPELLEE | AFFIRMED. |

**SHAWN A. WOMACK, Associate Justice**

Vann Bragg appeals the circuit court's denial of his Rule 37 petition, which alleged that his trial counsel was ineffective. Bragg argues that the circuit court clearly erred in finding otherwise, citing six instances of allegedly deficient and prejudicial performance. Bragg also argues that his trial counsel was ineffective based on cumulative errors. We affirm.

## I. *Background*

In June 2021, a Phillips County jury convicted Vann Bragg of first-degree murder and first-degree battery after he and Jason Robinson opened fire on an SUV at a Helena-West Helena gas station in January 2019, killing Casey Grant and seriously injuring Raymond Clark. At trial, the State introduced security camera footage of the shooting. Chief of Police James Smith testified that he was able to identify Bragg as one of the shooters in the video. Bragg's co-defendant, Robinson, also testified. Robinson admitted that he and Bragg opened fire on Grant's vehicle and fled the scene.

Detective Ashlee Tyler testified that he was able to identify Bragg as one of the shooters from the gas station's security camera footage because he had worked with Bragg's father in 2015, and Bragg would occasionally visit his father at work. According to Detective Tyler, he was also able to identify Bragg from his body type and his habit of pulling on or stroking his goatee. Detective Tyler also testified that he knew that the driver of the shooter's vehicle was Bragg's brother, Dedrick, and that the two were always together. Finally, Detective Tyler testified that Robinson told him that he and Bragg were the shooters.

The surviving victim, Raymond Clark, also testified. Clark described the incident and his injuries and explained that "Vann and his brother and whoever else, man" were the shooters. This court affirmed the convictions in April of 2023 and, in the same appeal, affirmed the circuit court's denial of a petition for writ of error coram nobis that was filed after Bragg's conviction but before the conclusion of his direct appeal.[1]

Shortly thereafter, Bragg filed a timely Rule 37 petition alleging ineffective assistance of trial counsel. In his petition, Bragg claimed that his trial counsel, Kyle Stoner, was ineffective for (1) failing to preserve Bragg's argument challenging Detective Tyler's identification of Bragg from security camera footage as insufficiently reliable, (2) failing to challenge Chief Smith's identification of Bragg from security camera footage as insufficiently reliable, (3) failing to introduce evidence to rebut Detective Tyler's identification, (4) failing to introduce the co-defendant's affidavit that claimed Bragg was not involved in the shooting, (5) failing to call Bragg's brother, Dedrick, as a defense witness, and (6) failing to

---

[1]*Bragg v. State*, 2023 Ark. 66, at 9–11, 663 S.W.3d 375, 380–82.

conduct an investigation into mitigation evidence for sentencing or calling any witnesses during the sentencing phase.

The circuit court held a hearing on Bragg's petition. At the hearing, ten witnesses testified, including Bragg himself, Bragg's trial counsel, Kyle Stoner, Bragg's brother, Dedrick, and Bragg's father, Marlon. A little more than three months after the hearing, the circuit court denied Bragg's Rule 37 petition. In a twelve-page order, the circuit court went through Bragg's claims one by one, explaining why none of them entitled Bragg to the relief he sought: a new trial or, alternatively, resentencing. This timely appeal followed. Jurisdiction is proper in this court because Bragg received a life sentence.[2]

## II. *Discussion*

We will reverse the denial of a Rule 37 petition only if the circuit court's ruling is clearly erroneous—that is, if the court is "firmly convinced a mistake was made after reviewing the totality of the evidence."[3] Arkansas courts review ineffective assistance of counsel under *Strickland v. Washington*'s two-prong test.[4]

First, Bragg must show that his counsel's performance was deficient.[5] There is a "strong presumption that counsel acted within reasonable professional judgment[,]" and Bragg must demonstrate that the alleged deficiency is "so serious that counsel failed to

---

[2]Ark. Sup. Ct. R. 1–2(b)(2).

[3]*Break v. State*, 2025 Ark. 95, at 5, 712 S.W.3d 315, 320.

[4]466 U.S. 669 (1984).

[5]*Break*, 2025 Ark. 95, at 5, 712 S.W.3d at 320.

function as the 'counsel' guaranteed by the Sixth Amendment[.]"[6]  Bragg can only

overcome this burden by identifying "specific, unreasonable errors—judged from counsel's

perspective at the time."[7]  "When claiming that counsel failed to object or argue something,

the petitioner must show that the objection or argument would have been meritorious.

Failure to make a meritless objection, motion, or argument is not deficient performance."[8]

Second, Bragg must also demonstrate prejudice "by proving a reasonable probability

that, but for counsel's errors, the outcome would have been different."[9]  As this court has

explained, "[t]his is a high bar."[10]  Finally, Bragg must satisfy both *Strickland* prongs to

prevail.[11]  Thus, if Bragg fails to establish deficiency or prejudice for any of his claims, we

need not address the other prong.[12]

*a. Failure to Preserve Challenge to Detective Tyler's Identification of Bragg*

Bragg first argues that the circuit court clearly erred in concluding that trial counsel's

failure to object to Detective Tyler's identification of Bragg as insufficiently reliable (and, as

a result, a violation of due process) did not amount to ineffective assistance of counsel.  On

direct appeal, this court held that Bragg's challenge to Detective Tyler's identification as a

---

[6]*Id.*, 712 S.W.3d at 320–21.

[7]*Id.*, 712 S.W.3d at 321.

[8]*Id.* at 6, 712 S.W.3d at 321.

[9]*Id.*

[10]*Barefield v. State*, 2024 Ark. 141, at 4, 696 S.W.3d 822, 827.

[11]*Id.*

[12]*Break*, 2025 Ark. 95, at 6, 712 S.W.3d at 321.

4

violation of his right to due process was unpreserved.[13] The circuit court found, however, that Detective Tyler's identification was sufficiently reliable and admissible, citing Detective Tyler's familiarity with Bragg. The circuit court also found there was no prejudice because other witnesses also identified Bragg as the shooter.

Regarding deficiency, it is unclear how the failure to object to Detective Tyler's identification as insufficiently reliable somehow violated Bragg's due-process rights. In support of his argument, Bragg relies on cases concerning pretrial lineups.[14] But these cases simply have no bearing on a police officer's identification of a suspect during an investigation when he recognizes the perpetrator on security camera footage.

As the circuit court explained, Detective Tyler's identification of Bragg was sufficiently reliable and admissible because Detective Tyler was familiar with Bragg, identified him as the perpetrator immediately upon viewing the video surveillance, and was certain of his identification. Moreover, Detective Tyler's identification of Bragg was consistent with the testimony of two eyewitnesses who were also familiar with Bragg. Had Bragg objected to Detective Tyler's identification as insufficiently reliable, the circuit court would have been right to overrule the objection for these reasons. Therefore, the failure to object on due-process grounds was not deficient.

---

[13] *Bragg*, 2023 Ark. 66, at 7, 663 S.W.3d at 380.

[14] *See, e.g.*, *Neil v. Biggers*, 409 U.S. 188, 198 (1972).

*b. Failure to Challenge Chief Smith's Identification of Bragg*

Bragg next argues that his trial counsel was ineffective for failing to object to Chief Smith's identification of Bragg from the security camera footage. In making this argument, Bragg simply adopts the arguments he made to challenge Detective Tyler's testimony—essentially, that his identification was unreliable and somehow violated due process. Chief Smith testified at trial that from his experience in law enforcement, his training to identify individuals by their "mannerisms, facial recognition and looking at different photos," and his pre-existing familiarity with Bragg, he was able to identify Bragg as one of the shooters on the gas station's security camera footage.

The circuit court found that Bragg's trial counsel was not ineffective for failing to object to Chief Smith's identification of Bragg as the perpetrator because his identification "was consistent with other testimony at trial of witnesses identifying . . . Bragg as the perpetrator in the video." This was not clear error. Bragg's counsel had no burden to object to the testimony as sufficiently unreliable when it was consistent with testimony of three other witnesses. And even if he did, there is no prejudice. Successfully impeaching Chief Smith's identification of Bragg as the shooter does not result in a "reasonable probability that, but for counsel's errors, the outcome would have been different."[15] Again, three other witnesses identified Bragg as the shooter.

---

[15]*Break*, 2025 Ark. 96, at 6, 712 S.W.3d at 321.

*c. Failure to Introduce Evidence to Rebut Detective Tyler's Identification of Bragg*

According to Bragg, his trial counsel was also ineffective for failing to introduce evidence to discredit Detective Tyler's identification of Bragg. Specifically, Bragg claims his trial counsel should have introduced the following evidence: (1) a McDonald's policy—where Bragg worked for a fourteen-week period from 2014 to 2015—that prohibited employees from having beards; (2) testimony from a former coworker about Bragg's facial hair; (3) records to show that Bragg was incarcerated "for nearly all of 2015 and all of 2016"; and (4) testimony from Bragg's father that Bragg visited him only "once or twice" at work in 2015.

The circuit court did not clearly err in concluding that the failure to introduce any of this evidence amounted to deficient performance. First, while the McDonald's policy states that beards are prohibited, it clearly provides that goatees are permissible. Importantly, Detective Tyler never testified that he recognized Bragg by his beard; he consistently said that he recognized Bragg because Bragg would stroke his goatee. Therefore, the McDonald's policy had no impeachment value, and Bragg's trial counsel was not ineffective by not introducing it.

Nor was it deficient for Bragg's trial counsel to not call a co-worker from McDonald's, Gerald Carter, who had known Bragg for decades and worked with him for less than two months in 2015. Carter's claim that McDonald's had a "strict no hair policy" is contradicted by the policy itself. And even if Bragg did not have a beard in January and February 2015, that has no bearing on the state of his facial hair for the remaining ten months of the year.

7

The same goes for Bragg's claim that his trial counsel should have introduced evidence that he was incarcerated for "nearly all of 2015 and 2016." According to Bragg, this means that Detective Tyler could not have seen him in 2015 when Bragg would visit his father at work. But Bragg was not incarcerated from January 1 to April 10, 2015. A more than four-month period in which Detective Tyler could have seen Bragg visit his father at work supports Detective Tyler's testimony, so Bragg's trial counsel was not deficient for not introducing this supposed rebuttal evidence. Contrary to Bragg's claim, this does not create a reasonable probability that the jury would have rejected Tyler's identification and acquitted Bragg.

And for the last subpoint, the circuit court did not clearly err in not crediting Bragg's father's testimony that Bragg visited him only "once or twice" at work in 2015. The testimony of a biased witness as to how many times Bragg visited him in 2015 has extremely limited impeachment value. Given that Bragg's trial counsel unsuccessfully tried to impeach Detective Tyler's testimony with other evidence at trial, Bragg has failed to show that any of this additional impeachment evidence created a reasonable probability that the jury would have rejected Detective Tyler's identification and acquitted Bragg.[16]

### d. Failure to Introduce Robinson's Affidavit

Next, Bragg argues that the circuit court clearly erred by concluding that his trial counsel was not ineffective for failing to introduce the affidavit of his co-defendant, Robinson. According to Bragg, his trial counsel should have introduced the affidavit itself, which claimed, in part, that "Bragg was not in the Vehicle or at the Victory gas station on"

---

[16] *See id.*

8

the day of the murder, and the original statement Robinson gave to police regarding Bragg's involvement in the shooting "was only given because [Robinson] was threatened by the police and was told harm would come to [him] and [his] family if he did not say it was Bragg."

Although Bragg's trial counsel did not introduce the affidavit, he cross-examined Robinson about it at trial. As Bragg's trial counsel recounted at the Rule 37 hearing, he cross-examined Robinson about the affidavit "in front of the jury to show that he – he was lying." Bragg now claims that had the jury seen Robinson's actual affidavit, there would have been a reasonable probability of a different outcome. But he does not explain how. "Conclusory statements that counsel was ineffective cannot be the basis for postconviction relief[,]" but that is exactly what this argument is.[17] Again, Bragg's trial counsel cross-examined Robinson about his affidavit to the point that he believed he had shown the jury that Robinson was lying. It is unclear what could have been further accomplished by introducing the affidavit itself, and the circuit court did not clearly err in concluding that this did not amount to ineffective assistance of counsel.

*e. Failure to Call Dedrick Bragg as a Witness*

Dedrick Bragg is Vann Bragg's brother and was a co-defendant in the case. Bragg now complains that his trial counsel did not call Dedrick as a witness, claiming that Dedrick would have testified that Bragg was not at the gas station at the time of the shooting and that the two shooters were Robinson and a mysterious third party named Kenny.[18] At the

---

[17]*Neal v. State*, 2025 Ark. 151, at 3, 720 S.W.3d 858, 862.

[18]Dedrick testified that he does not know Kenny's last name.

9

Rule 37 hearing, Bragg's trial counsel testified that he did not speak to Dedrick about testifying because he "was advised he would not make any statement since he was a co-defendant." Although Bragg's counsel mistakenly recalled that Dedrick's attorney was Don Etherly, it does not change the fact that Dedrick was a codefendant, and Dedrick's attorney told Bragg's trial counsel that he was unwilling to give a statement.[19]

Bragg has the burden of showing that his trial counsel's actions were deficient.[20] Bragg could have called Dedrick's attorney to testify at the Rule 37 hearing about his interactions with Bragg's trial counsel, but he failed to do so. Given this, the circuit court did not clearly err in crediting Bragg's trial counsel's testimony that Dedrick did not want to give a statement. The potential misstatement by Bragg's trial counsel that Don Etherly was Dedrick's attorney does not undermine the circuit court's finding that Bragg's trial counsel did, in fact, speak to Dedrick's attorney. Bragg's trial counsel exercised reasonable professional judgment in neither speaking with nor calling Dedrick as a witness on the basis of his attorney's statement.

*f. Failure to Conduct Investigation into Mitigation Evidence for Sentencing*

Bragg also argues that his trial counsel was ineffective for failing to investigate mitigation evidence for sentencing or call any witnesses during the sentencing phase. But Bragg, in coordination with his counsel, decided not to offer mitigation evidence. Although Bragg initially mentioned his parents as potential witnesses during the sentencing phase, he

---

[19]Don Etherly was Robinson's attorney.

[20]*Mays v. State*, 303 Ark. 505, 506, 798 S.W.2d 75, 76 (1990).

later advised his trial counsel that he did not want to call them. Even though Bragg now disputes this, the circuit court did not credit his postconviction assertions. And this was not clear error because "[a]rguments based upon self-serving statements do not meet the burden of establishing an ineffective-assistance claim."[21]

Simply put, Bragg cannot have it one way at trial and then complain that his trial counsel was ineffective once he is convicted.[22] Thus, the circuit court did not clearly err in finding that Bragg's trial counsel was not ineffective for failing to investigate mitigation evidence and call sentencing-phase witnesses—he was simply complying with his client's wishes at the time, which is objectively reasonable.[23]

### g. Cumulative Error

Finally, Bragg asks us to reverse because of cumulative error. To the extent Bragg contends there was cumulative error by his trial counsel that amounted to ineffective assistance, he did not make this argument below, so it is unpreserved for appeal.[24] If Bragg is instead claiming that there was cumulative error by the circuit court at the Rule 37 stage,

---

[21] *Airsman v. State*, 2015 Ark. 409, at 6, 473 S.W.3d 549, 555.

[22] *Roos v. State*, 2019 Ark. 360, at 12, 588 S.W.3d 738, 745 (explaining that "an attorney's performance is not deficient for following his or her client's wishes").

[23] *See id.*

[24] *Bragg*, 2023 Ark. 66, at 6–7, 663 S.W.3d at 380.

the argument is unavailing. Without any individual error in this case, we hold that there is no cumulative error.[25]

## III. *Conclusion*

Bragg failed to demonstrate that his trial counsel was ineffective, so we affirm the circuit court's denial of his Rule 37 petition.

Affirmed.

Special Justice MARY CAROLE YOUNG joins.

BRONNI, J., not participating.

*Lassiter & Cassinelli*, by: *Michael Kiel Kaiser*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Christopher R. Warthen*, Ass't Att'y Gen., for appellee.

---

[25] *See Faulkner v. State*, 2026 Ark. 60, at 10; *see also Wainwright v. Lockhart*, 80 F.3d 1226, 1233 (8th Cir. 1996) (explaining that "[e]rrors that are not unconstitutional individually cannot be added together to create a constitutional violation").